**Mark T. WAGNER, Appellee,**

v.

**Erin M. WAGNER, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 20, 2005.

Filed Nov. 7, 2005.

John E. Calior, Hermitage, for appellant.

John K. Whalen, Mercer, for appellee.

Before: McCAFFERY, POPOVICH and JOHNSON, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Erin M. O'Donnell, formerly Erin M. Wagner, (Mother) appeals the orders entered on December 28, 2004, in the Court of Common Pleas of Mercer County, that awarded temporary custody of her minor children to the children's father, Mark T. Wagner (Father), while she is on military duty in Iraq, denied her petition to stay the matter, and denied her petition to transfer the matter to her home state of Florida. Upon review, we reverse.

¶ 2 The relevant facts and procedural history of this case are as follows: Mother and Father are the parents of Mark Wagner, Jr. (DOB 5/28/1995), and Ariel Wagner (DOB 7/22/1997). Mother and Father were divorced by the Mercer County Court of Common Pleas. On March 11, 2002, following the parties' divorce, Mother obtained primary physical custody of the parties' two minor children. Mother and Father have shared legal custody of the minor children. After the divorce, Mother, a member of the United States Army Reserve, resided in Greensburg, Pennsylvania, with her children. Mother is domiciled in the state of Florida, and she re-

tains a mailing address, drivers' license, and voter registration in that state. In November, 2004, Mother moved from Greensburg, to her new duty station in Fort Dix, New Jersey, and she moved the children to the state of Florida to stay with her stepmother. The United States Army assigned Mother to Fort Dix to undergo training for an impending duty assignment in Iraq.

¶ 3 Father, a resident of Warren, Ohio, commenced this action on November 19, 2004, in the Mercer County Court of Common Pleas by filing an emergency petition that sought the return of the children from the state of Florida to Pennsylvania and an award of temporary primary physical custody of the children during Mother's deployment overseas. On that same day, the trial court entered an *ex parte* order that directed Mother to refrain from removing the children from this Commonwealth or to return the children if she had, in fact, removed them from the Commonwealth. The order also granted temporary primary physical custody to Father in the event that Mother would be deployed for an extended period outside the Commonwealth. Lastly, the order issued a rule to show cause upon Mother why Father should not be granted primary physical custody while Mother was deployed overseas. The trial court made the rule returnable at a hearing to be held on December 1, 2004.

¶ 4 On November 29, 2004, Mother filed a "motion to vacate" the trial court's November 19, 2004 order. In the motion, Mother asserted that she was already on active duty with the United States Army and that she was stationed in Fort Dix while she trained for deployment to Iraq. Mother's motion requested that the trial court stay the proceedings pursuant to the Servicemembers' Civil Relief Act, 50 U.S.C. Appx. § 501, *et seq.* Rather than

rule on the motion immediately, the trial court withheld judgment on the motion until the hearing scheduled for December 1, 2004.

¶ 5 Neither party was present at the December 1, 2004 hearing, but they were represented by counsel. During the hearing, the trial court learned that Mother, in fact, had access to video conferencing equipment at Fort Dix and, therefore, could participate at a hearing on Father's emergency petition. Consequently, the trial court granted a temporary stay of the proceedings until conclusion of the hearing, and it scheduled a hearing for December 20, 2004, whereupon the trial court would adjudicate both Mother's and Father's motions.

¶ 6 Prior to the December 20, 2004 hearing, Mother filed a motion to transfer the case to the state of Florida. Mother's motion asserted, *inter alia,* that the trial court lacked jurisdiction over the parties because the parties (and the children) did not reside in Pennsylvania. The trial court also withheld adjudication of this motion until the December 20, 2004 hearing.

¶ 7 The trial court conducted the hearing on December 20, 2004. The trial court conducted an additional hearing on December 23, 2004. Father was present for both hearings, and Mother participated in the hearings *via* two-way video conference. On December 28, 2004, following the hearings, the trial court denied Mother's motion to stay the proceedings and her motion to transfer the case to the state of Florida. The trial court granted Father temporary primary physical custody of the children while Mother was deployed for military duty overseas.

¶ 8 Mother filed a timely notice of appeal to this Court on January 19, 2005. The trial court ordered Mother to file a concise statement of matters complained of

on appeal, and she complied. Thereafter, the trial court authored an opinion that addressed the issues presented in Mother's concise statement.

¶ 9 Mother presents the following issues for our review:

1. Whether the [trial court] had jurisdiction to hear the case?
2. Whether the [trial court] should have granted a permanent stay under the Servicemembers' Civil Relief Act?

Mother's brief, at 4.

■■■ ¶ 10 Before we analyze Mother's issues, we must first consider whether the trial court's "temporary" custody order of December 28, 2004, was a final, appealable order. *See Mensch v. Mensch,* 713 A.2d 690, 691 (Pa.Super.1998) (Superior Court may assess its jurisdiction to hear an appeal *sua sponte*). Generally, a custody order will be considered final and appealable only if it is both: (1) entered after the court has completed its hearings on the merits; and (2) intended by the court to constitute a complete resolution of the custody claims pending between the parties. *See G.B. v. M.M.B.,* 448 Pa.Super. 133, 670 A.2d 714, 720 (1996).

¶ 11 In the present case, the trial court issued its order at the completion of the initial hearings, but its December 28, 2004 order stated "in the event [Mother] is not returned or assigned by the military to Greensburg, Pennsylvania, then there shall be a hearing held at [Mother's] request to address where she will be residing[. . .]." Thus, the possibility exists that further hearings in this case will occur and, therefore, that the custody order is not final. *See, e.g., G.B.,* 670 A.2d at 720. Nevertheless, in *Parker v. MacDonald,* 344 Pa.Super. 552, 496 A.2d 1244, 1247 (1985), we held that a custody order that *anticipates* future hearings that could take place on *application* of one of the parties is a final,

appealable order. The language of the order in this case indicates that the trial court concluded its review of the issues and that it was advising Mother that she could seek review and modification of the order after her return from deployment in Iraq. Consequently, it is clear that the order merely anticipates future custody hearings that could take place *via* Mother's application. Accordingly, the order is final, and we will proceed to a review of the merits of Mother's issues. *See Parker,* 496 A.2d at 1247.

■■■ ¶ 12 Mother contends first that the trial court did not have jurisdiction over this case because the trial court did not meet the jurisdictional criteria set forth in the Uniform Child Custody Jurisdiction and Enforcement Act, 23 Pa.C.S.A. §§ 5401–5482 (UCCJEA). Our standard of review for this issue is as follows:

A court's decision to exercise or decline jurisdiction is subject to an abuse of discretion standard of review and will not be disturbed absent an abuse of that discretion. Under Pennsylvania law, an abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings. An abuse of discretion requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures.

*Lucas v. Lucas,* 2005 PA Super 301, 4, 882 A.2d 523 (citation omitted).

■■■ ¶ 13 We note that this case presents this Court with an appeal from a *modification* of a child custody order. All parties agree that the trial court possessed jurisdiction to enter the initial child custody order of March 11, 2002. In cases involving modification of child custody orders within the ambit of the UCCJEA, a

court must first determine whether it has "exclusive, continuing jurisdiction" over the child custody order. *See* 23 Pa.C.S.A. § 5422(a). Section 5422 of the UCCJEA sets forth the following test to determine whether a trial court retains "exclusive, continuing jurisdiction" over its initial child custody order:

(a) GENERAL RULE.—Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth which has made a child custody determination consistent with section 5421 (relating to initial child custody jurisdiction) or 5423 (relating to jurisdiction to modify determination) has exclusive, continuing jurisdiction over the determination until:

(1) a court of this Commonwealth determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent[1] have a significant connection with this Commonwealth and that substantial evidence is no longer available in this Commonwealth concerning the child's care, protection, training and personal relationships; or

(2) a court of this Commonwealth or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this Commonwealth.

(b) MODIFICATION WHERE COURT DOES NOT HAVE EXCLUSIVE, CONTINUING JURISDICTION.—A court of this Commonwealth which has made a child custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under section 5421.

¶ 14 As stated above, the trial court had jurisdiction to enter the initial March 11, 2002 child custody order. Section 5422 is written in the disjunctive, and, therefore, it is clear that the trial court was required only to determine whether the children failed one of the jurisdictional tests set forth in Section 5422(a). *Cf. In re Estate of Roos*, 305 Pa.Super. 86, 451 A.2d 255, 259 n. 2 (1982) (applying normal rules of statutory construction, presence of disjunctive word "or" in statute indicates that elements of statute are met when any particular element is satisfied, regardless of whether other elements are also met). We conclude that the trial court lacked "exclusive, continuing jurisdiction" over this case because the record indicates that the children, Mother, and Father do not reside presently in this Commonwealth. *See* 23 Pa.C.S.A. § 5422(a)(2).

¶ 15 The classic legal definition of the term "residence" in this Commonwealth is "living in a particular place, requiring only physical presence." *See Norman v. Pennsylvania Nat'l. Ins. Co.*, 453 Pa.Super. 569, 684 A.2d 189, 191 (1996) (citation omitted).[2]

---

1. *Section 5402 of the UCCJEA defines the term "person acting as a parent" as follows:*
   A person other than a parent, who:
   (1) has physical custody of the child or has had physical custody for a period of six consecutive months, including any temporary absence, within one year immediately before the commencement of a child custody proceeding; and

(2) has been awarded legal custody by a court or claims a right to legal custody under the laws of this Commonwealth.

2. The term "domicile," with which the term "residence" is often confused, is "that place where [one] has [their] fixed true, fixed and permanent home and principal establishment, and to which whenever [they are] absent [they

Utilizing this definition, none of the parties resided in Pennsylvania at the time the petition was filed or thereafter. At the time the Father's petition was filed, Father was a resident of Warren, Ohio (where he currently resides), and Mother was a resident of Fort Dix, New Jersey (Mother resides currently in Iraq at her duty station). The children resided in the state of Florida at the time Father filed his emergency petition.

¶ 16 It is correct that the children often stayed with Father's mother at her home in Pennsylvania. Nevertheless, Father's mother does not qualify as a "person acting as a parent," as defined by the UC-CJEA. Father's mother was not awarded legal custody of the children, and she did not, at any relevant point, seek legal custody over the children pursuant to the laws of this Commonwealth. *See* 23 Pa.C.S.A. § 5402. Consequently, we are constrained to conclude that none of the parties associated with this litigation reside in Pennsylvania, and, as such, the trial court lacked "exclusive, continuing jurisdiction" to modify its custody order of March 11, 2002.

■ ¶ 17 However, our inquiry does not end here. Section 5422 of the UCCJEA indicates that a trial court may modify a custody order for which it lacks "exclusive, continuing jurisdiction" if the trial court has jurisdiction to make an initial determination under Section 5421 of the UCCJEA. Section 5421 codifies the exclusive jurisdictional prerequisites of the UCCJEA, which state the following:

(a) GENERAL RULE.—Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth has jurisdiction to make an initial child custody determination only if:

(1) this Commonwealth is the home state of the child on the date of the commencement of the proceeding or was the home state [3] of the child within six months before the commencement of the proceeding and the child is absent from this Commonwealth but a parent or person acting as a parent continues to live in this Commonwealth;

(2) a court of another state does not have jurisdiction under paragraph (1) or a court of the home state of the child has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum under section 5427 (relating to inconvenient forum) or 5428 (relating to jurisdiction declined by reason of conduct) and:

(i) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this Commonwealth other than mere physical presence; and

(ii) substantial evidence is available in this Commonwealth concerning the child's care, protection,

have] the intention of returning." *Norman,* 684 A.2d at 191 (citation omitted).

3. The term "home state" is defined by the Section 5402 of the UCCJEA as follows:

The state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child six months of age or younger, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

training and personal relationships;

(3) all courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this Commonwealth is the more appropriate forum to determine the custody of the child under section 5427 or 5428; or

(4) *no court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2) or (3).*

(b) EXCLUSIVE JURISDICTIONAL BASIS.—Subsection (a) is the exclusive jurisdictional basis for making a child custody determination by a court of this Commonwealth.

(c) PHYSICAL PRESENCE AND PERSONAL JURISDICTION UNNECESSARY.—Physical presence of or personal jurisdiction over a party or a child is not necessary or sufficient to make a child custody determination.

¶ 18 A plain reading of this section indicates that, in order for a Pennsylvania trial court to exercise jurisdiction over a child custody matter within the ambit of the UCCJEA, it must first determine whether this Commonwealth is the children's "home state." As stated above, this Commonwealth is the "home state" of the children if the children lived in this Commonwealth with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. The record indicates that the children lived in this Commonwealth with Mother for at least six months prior to the commencement of this proceeding. Accordingly, the trial court met the first prong of the jurisdiction test of Section 5421.

¶ 19 However, because the children are absent from this Commonwealth, we must determine whether a parent of the children still resides in this Commonwealth or whether a person who acted as a parent of the children still resides in this Commonwealth. *See* 23 Pa.C.S.A. § 5421(a). As stated above, the children's parents do not reside in this Commonwealth. Further, the children do not have a custodian residing in this Commonwealth that meets the UCCJEA's definition of a "person acting as a parent." Accordingly, we are constrained to conclude that this Commonwealth is not the children's "home state," and the trial court could not exercise jurisdiction over this child custody case on this basis.

¶ 20 Next, we must consider whether the trial court could have exercised jurisdiction over this case on the basis of the jurisdictional test set forth in Section 5421(a)(2), known as the "significant connections" test. The first prong of this test requires this Court to determine whether any other state may assume jurisdiction under the "home state" test. *See* 23 Pa.C.S.A. § 5421(a)(2); *see also McCoy v. Thresh,* 862 A.2d 109, 112 (Pa.Super.2004) (Pennsylvania courts will not assume jurisdiction under "significant connections" principle unless it appears that no other state can assume jurisdiction under statutory prerequisites substantially similar to Pennsylvania law).

¶ 21 Mother, although a resident of Pennsylvania during her period of military service in this Commonwealth, was born and raised in Florida. She maintains her drivers' license, voter registration, and tax registration with the state of Florida, and she intends to live in the state of Florida with the children upon her return from Iraq. Accordingly, despite her previous residency in this Commonwealth, Mother is domiciled in the state of Florida. *See*

*Norman,* 684 A.2d at 191. Mother moved the children to the state of Florida immediately before this litigation commenced. Accordingly, we will consider whether the state of Florida could exercise jurisdiction over this child custody case as the "home state" of the children. *See* 23 Pa.C.S.A. § 5421(a)(2).

¶ 22 The state of Florida's version of 23 Pa.C.S.A. § 5421 is codified at Fla. Stat. § 61.514, and the two sections are identical in substance. Therefore, because the children did not live in the state of Florida for six months with Mother prior to the filing of Father's emergency petition, the state of Florida fails the "home state" jurisdiction test. For this same reason, both the state of Ohio (Father's state of residence) and the state of New Jersey (Mother's state of residence prior to deployment to Iraq) do not qualify as the "home state" of the children. *See* O.R.C. Ann. § 3127.15 (Ohio "home state" jurisdiction test); *see also* N.J.S.A. § 2A:24–65 (New Jersey "home state" jurisdiction test). Accordingly, we will consider whether the children have "significant connections" with Pennsylvania such that the trial court's exercise of subject matter jurisdiction in this case was proper. *See* 23 Pa.C.S.A. § 5421(a)(2)(i).[4],[5]

¶ 23 When analyzing the UCCJEA's predecessor, the Uniform Child Custody Jurisdiction Act (UCCJA), 23 Pa.C.S.A. §§ 5341–5366,[6] we described the purpose of the "significant connections" test as follows:

[The test's] *purpose is to limit jurisdiction* rather than to proliferate it. The first clause of the paragraph is important: jurisdiction exists only if it is in the child's interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be *maximum* rather than *minimum* contact with the state.

*See Lucas,* 2005 PA Super 301, 11, 882 A.2d 523 (footnote and citations omitted).

¶ 24 Although the Pennsylvania Legislature omitted from the UCCJEA a "best interest of the child" analysis, as was present in the UCCJA, the description of the test as a *maximum* contacts test is consistent with the UCCJEA. *Compare* 23 Pa. C.S.A. § 5421(a)(2)(i)-(ii).

¶ 25 The trial court found that the children had significant contacts with Pennsylvania through Father's family because their paternal grandmother and paternal extended family reside in or near Hermitage, Pennsylvania, and they were enrolled in a Pennsylvania grade school until Mother moved them to Florida in November 2004. Father stated that he considered letting the children live with his mother in Hermitage, Pennsylvania, during the school year. Father, however, expressed no intention on moving to or living in Pennsylvania with the children.

¶ 26 Mother, on the other hand, was raised in Florida and intends to live in

4. We note that no other state courts have declined jurisdiction in this case. *See* 23 Pa. C.S.A. § 5421(a)(2).

5. Parenthetically, we note that no other state has declined jurisdiction on the basis of inconvenient forum, *see* 23 Pa.C.S.A. § 5427, or by reason of the conduct of the parties. *See* 23 Pa.C.S.A. § 5428. Likewise, there are no

facts to indicate that an exercise of temporary emergency jurisdiction was warranted by the trial court. *See* 23 Pa.C.S.A. 5424.

6. The UCCJA was repealed by 2004, June 15, P.L. 236, No. 39, § 2, effective Aug. 16, 2004, and re-enacted with revisions as the UCCJEA.

Florida upon her return from Iraq. Mother has a Florida drivers' license, a Florida license plate, is registered to vote in Florida, and uses her stepmother's address as her own. Mother's stepmother, stepgrandparents, and aunts and uncles (through her stepmother) reside in Florida. The children live in the state of Florida currently and are attending school there. The children engaged in yearly visits with relatives in the state of Florida. These visits lasted for approximately two or three-weeks, and the family stayed generally at Mother's stepmother's home. The trial court's findings of fact with regard to the children's connections with Pennsylvania are supported by the record, and we, as an appellate court, cannot now overturn them. *Liebner v. Simcox*, 834 A.2d 606, 609 (Pa.Super.2003).

¶ 27 Although bound by the trial court's findings of fact, we are not bound by the deductions or inferences drawn from those facts by the trial court. *See Liebner*, 834 A.2d at 609. Accordingly, we will contrast the children's connections with this Commonwealth to those they hold with the state of Florida. First, and foremost, Father is *not* a resident of this Commonwealth, and there is no indication from the record before us that he will be a resident of this Commonwealth in the future. It is correct that Father's extended family lives in Pennsylvania. While Mother and the children lived in Pennsylvania during Mother's deployment, the children enjoyed extensive visitation with Father, his mother, and their relatives at Father's mother's home in Pennsylvania.[7]

¶ 28 On the other hand, Mother, a former resident of Pennsylvania, is domiciled in the state of Florida and Mother's entire extended family lives in the state of Florida.[8] As was the case with Father's family, the children visited with Mother's extended family on many occasions during long vacations to the state of Florida. As such, when we contrast the children's extended familial relations in this Commonwealth with those of the state of Florida, the two jurisdictions possess relatively equal connections to the children.

¶ 29 As demonstrated above, the children's connections with Pennsylvania were based largely on Mother's deployment in this Commonwealth and visitations with Father and his extended family in Father's mother's home. Thus, it is clear that the children's connections with Pennsylvania through Father alone are, at best, *indirect*. However, the children, in addition to their visits with Mother's extended family in the state of Florida, have maintained continuous connection with the state of Florida because Mother is domiciled in the state of Florida. After Mother's deployment in Iraq concludes, she intends to live, with the children and the remainder of her family, in the state of Florida. This fact outweighs the connections that the children possess currently with this Commonwealth through Father, a non-resident. Accordingly, it is clear that the state of Florida, and not Pennsylvania, has the greater degree of connection with the children. *See Lucas*, 2005 PA Super 301, 11, 882 A.2d 523. Accordingly, we conclude that Pennsylvania lacks "significant con-

---

7. The record indicates an approximate four-year span of time from 1995 to 1999, wherein Mother resided in Pennsylvania but was not a member of the armed services.

8. The trial court's opinion makes much of Mother's lack of blood ties to her family in Florida. Mother lived in Florida for 19 years, and, during that time, her father, her stepmother, and her stepmother's extended family were the individuals that she considered to be her family. Thus, the absence of blood ties between Mother and her family is not relevant to the degree of connection between her and her family.

nections" that would justify an exercise of its jurisdiction under the UCCJEA. *See* 23 Pa.C.S.A. § 5421(a)(2)(i).

¶ 30 As noted by the trial court, the primary stated policy objective of the UC-CJEA is to avoid jurisdictional competition and conflict with courts of other states in matters of child custody. *See* 23 Pa.C.S.A. § 5401. However, we are at a loss in determining the means by which this objective can be fulfilled satisfactorily in the present case, inasmuch as the competing parties are not residents of this Commonwealth and are unable to demonstrate a statutorily recognized connection that their children possess with this Commonwealth in such a degree that would justify the Courts of this Commonwealth to exercise subject matter jurisdiction in this case. Thus, the exercise of subject matter jurisdiction by the Pennsylvania courts over this case will result only in further conflict with other state courts and cause needless future litigation.

¶ 31 Accordingly, we are constrained to conclude that the trial court abused its discretion when it accepted jurisdiction in this case. *See Lucas,* 2005 PA Super 301, 4, 882 A.2d 523. Therefore, we are bound to reverse its orders and remand with the direction that the trial court transfer this case to a court in the state of Florida of competent jurisdiction.[9]

¶ 32 Orders reversed. Case remanded with instructions. Jurisdiction relinquished.

¶ 33 JOHNSON, J. Concurs in the Result.

9. Based on our disposition, we need not reach Mother's second issue.