**Coleman v. Coleman**

C.P. of Jefferson County, no. 58-2001 CD.

*Kerith Strano Taylor,* for plaintiff.
*Scott C. Allen,* for defendant.

FORADORA, *P.J.,* February 7, 2007—

## INTRODUCTION

Now before the court is a motion to change venue filed by the plaintiff, Sherri C. Coleman (now Miller), who asserts that jurisdiction over the continuing custody of Sarah Alexis Coleman properly belongs in the state of Washington. The court conducted a hearing on that question January 26, 2007. Miller, the defendant, Michael Lee Coleman, and the paternal grandmother, Barbara Coleman, testified.

## FACTUAL FINDINGS

(1) Sherri Miller is the natural mother of Sarah Alexis Coleman.

(2) Miller lived in Jefferson County growing up and attended the Punxsutawney Area High School.

(3) Miller's mother continues to live in Punxsutawney.

(4) Michael Coleman is Sarah's natural father.

(5) Coleman has always lived in Jefferson County and currently resides in Brookville, Pennsylvania.

(6) Coleman's parents also reside in Brookville, Pennsylvania.

(7) Coleman's brothers reside in Punxsutawney and Summerville, respectively, both of which are in Jefferson County, and his sister resides in Clarion, Pennsylvania, which is approximately a 20-minute drive from Brookville.

(8) Sarah was born at Punxsutawney Hospital in Jefferson County, Pennsylvania, on May 23, 1996.

(9) Miller and Coleman were married and divorced in Jefferson County in 1998 and 2001, respectively.

(10) Miller remarried approximately three years ago. Her current husband grew up in Jefferson County and has family here.

(11) On April 4, 2001, the court signed a stipulation and consent order concerning the custody of Sarah. Paragraph five of that order provides in part that "this court shall maintain continuing jurisdiction of this custody matter."

(12) With Coleman's knowledge, but without his specific consent, Miller moved to Connecticut with Sarah in July 2001. They lived there for approximately three years.

4

(13) Coleman occasionally traveled to Connecticut to visit Sarah.

(14) In June 2004, Sarah moved with Miller and her new husband to South Carolina, where her husband had the opportunity for a better job.

(15) Sarah moved with the Millers to the state of Washington in October 2005. There she also lives with her 13-year-old brother and 4-year-old sister. All are currently legal residents of that state.

(16) Sarah is in her second year at Sidney Glen Elementary School in Port Orchard, Washington. She is also in the Girl Scouts and is actively involved in ballet, for which she takes lessons three times per week and is currently practicing for a performance later this year.

(17) Since Miller and Sarah left Connecticut, Coleman has not visited his daughter but has sent her gift packages on seven or eight occasions, including approximately once a month for the last six or seven months.

(18) Since leaving Pennsylvania in 2001, Miller has returned with Sarah for a total of three brief visits. On at least one of those occasions, they visited with Sarah's paternal grandparents.

(19) Miller enjoys good relationships and continuing contact with Sarah's paternal grandparents. She regularly sends photographs and other momentos that permit Mr. and Mrs. Coleman to keep track of their granddaughter's physical and social development. Mr. and Mrs. Coleman frequently send Sarah gift packages, as well.

(20) Miller also enjoys a cordial relationship with Coleman's sister. They exchange cards and small gifts

on various occasions. Coleman's sister once visited Miller and Sarah in South Carolina.

(21) Coleman likewise enjoys close relationships with his parents. He and Mr. Coleman have lunch together every afternoon, and he visits his mother regularly.

(22) Coleman also sees Miller's mother and stepfather regularly and recently installed cabinets in their home.

(23) Miller's contact with her mother is limited to approximately one telephone conversation each month, and she talks to her brother only about once a year—at Christmas time.

(24) Besides the fact that his daughter lives there, Coleman has no other contacts with the state of Washington.

(25) By letter dated November 13, 2006, Coleman, through his attorney, indicated his desire to see Sarah over the holiday period and proposed a visit that would comport with the existing custody order and have Sarah back to her mother for Christmas. Miller did not respond to that letter.

(26) Coleman filed a petition for special relief and petition for modification of partial custody order on November 22, 2006, requesting partial physical custody over the Christmas holiday and thereafter during holidays and summer vacations.

(27) By order of that same date, the court scheduled a mediation conference and tentative custody hearing for January 26, 2007.

(28) By orders dated December 7, 2006, the court vacated its November 22, 2006 orders and scheduled a hearing on the motion to change venue on January 26, 2007.

## DISCUSSION

The initial custody order of April 4, 2001 was entered by this court in compliance with both the Parental Kidnapping Protection Act (PKPA)—28 U.S.C. §1738A—and Pennsylvania's Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA)—23 Pa.C.S. §5401 et seq. See also, *O'Gwynn v. Hebert,* 878 A.2d 119 (Pa. Super. 2005). The question now arises, however, whether this court can and should retain jurisdiction to modify that order.

Section 5422 of the UCCJEA governs the question of continuing jurisdiction, providing that

"[e]xcept as otherwise provided . . . a court of this Commonwealth which has made a child custody determination consistent with section 5421 [governing initial child custody jurisdiction] has exclusive continuing jurisdiction over the determination until:

" (1) a court of this Commonwealth determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this Commonwealth and that substantial evidence is no longer available in this Commonwealth concerning the child's care, protection, training and personal relationships; or

"(2) a court of this Commonwealth or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this Commonwealth."

When the April 4, 2001 order was entered, Sarah was nearly 5 years of age and had lived with her natural parents in Jefferson County, Pennsylvania from the time she was born. Pennsylvania was thus her home state. Her

current home state, where she has constantly resided since October 2005, is Washington. Nonetheless, the court concludes that because this case fits the criteria established in section 5422(a)(1), jurisdiction properly remains here.

While Sarah does not currently reside in Pennsylvania, she did for the first half of her life. She was born at Punxsutawney Hospital to two parents who had grown up in the area and eventually married. She remained here until she was 5 and would thus have significant medical and other records in Pennsylvania. Moreover, besides her current nuclear family, all of Sarah's relatives reside in Pennsylvania, including her father, both sets of grandparents, and aunts and uncles. Coleman remains close with most of these individuals, who would become a part of Sarah's life while she was with her father. That being the case, because nearly all of them live in or near Jefferson County, this court would be in the best position to ensure Sarah's safety while here, facilitate any home studies or other procedures deemed necessary to accomplish that goal, and investigate any allegations or concerns that may arise in the future regarding Sarah's well-being during her stays in Pennsylvania.

Significantly, all Coleman seeks is partial physical custody of Sarah—essentially a reasonable visitation schedule that would afford him time with his daughter during summers and holidays. He is not requesting a custody arrangement that would require him to enroll Sarah in school or acquire a primary physician to meet her health needs. Any information concerning such matters as the condition and appropriateness of Coleman's residence, *i.e.,* evidence concerning Sarah's care, protection, training, and personal relations while with her father,

can best be acquired and monitored in Jefferson County by Jefferson County personnel.

*Skomo v. Skomo,* 844 A.2d 1256 (Pa. Super. 2004), is instructive. There mother and father were married and minor child was born in the state of Kansas. *Id.* at 1257. In 2001, mother and child relocated to Pennsylvania, where they lived for all but three months between then and the date of decision. *Id.* With a custody order from Kansas already in place, mother filed a custody complaint in Pennsylvania. *Id.* The trial court subsequently ruled that it did not have jurisdiction. *Id.* at 1258. Superior Court, acknowledging that Pennsylvania had become the minor child's home state, nonetheless affirmed the trial court's ruling. Reviewing the PKPA, the *Skomo* court observed that custody remained in a deciding jurisdiction if its initial custody decree complied with the PKPA; it maintained jurisdiction over the decree under its own law; and at least one of the parties to the existing action resided within the jurisdiction. *Id.* at 1260-61. See also, *In re Adoption of N.M.B.,* 564 Pa. 117, 128-29, 764 A.2d 1042, 1048 (2000) (same). All three criteria are satisfied here.

As discussed above, the April 4, 2001 stipulation and consent order satisfied the PKPA's requirements, and the order itself specified that this court would retain jurisdiction over the matter. Moreover, Coleman has lived in Pennsylvania, and specifically in Jefferson County, at all relevant times, including when he filed his petition for modification. Additionally, Coleman's presence and the fact that Sarah still has a significant connection with the Commonwealth indicate that continuing jurisdiction is proper here.[1]

---

1. In another factually similar case, *Wagner v. Wagner,* 887 A.2d 282 (Pa. Super. 2005), the court declined continuing jurisdiction even

For the above reasons, the court declines to relinquish jurisdiction over this custody matter.

## ORDER

And now, February 7, 2007, for the reasons articulated in the preceding opinion, it is hereby ordered and decreed that plaintiff's motion to change venue is denied. This court shall retain jurisdiction over the instant custody matter.

---

though the initial custody order was properly entered in Pennsylvania. *Id.* at 282-83. Decisive there, however, was that the child, neither of the child's parents, nor a person acting as a parent of the child still resided in Pennsylvania. *Id.* at 288.