**Hunter v. Erb**

*Jeffrey R. Boyd,* for plaintiff.
*David S. Kaplan,* for defendant.

LASH, *J.,* October 22, 2009—Presently before the court is a petition to modify a child custody order, styled as a "complaint for custody," and an emergency petition for special relief filed by plaintiff, Travis C. Hunter (Father). The defendant, Bree F. Erb (Mother), has filed preliminary objections, alleging that Pennsylvania has no jurisdiction to decide these petitions. On October 7, 2009, this court held a hearing, limited in scope to receiving evidence on the issue of jurisdiction. For reasons set forth herein, we sustain Mother's objections and dismiss Father's petitions.

The parties are the natural parents of a child, Tru Hunter (minor child), born March 22, 1997. The parties, who were previously married, separated in May of 1999 and divorced in January 2002. At the time, they were residents of California.

When the parties separated, Mother assumed primary custody responsibilities for the minor child at her residence in San Diego, California. At the time of the divorce,

a custody order was entered in the Superior Court of California, County of San Diego,[1] awarding Mother primary custody. Subsequently, other orders governing custody were entered, with the most recent order being entered on February 2, 2005. That order provided for shared legal custody, with Mother to retain primary physical custody and Father to have partial custody, Father's schedule being contingent on whether he was residing in California or in another state. This order remains in full force and effect.

Later in 2005, Father moved to Boyertown, Pennsylvania, and has resided there since that time. Mother remained in San Diego, California, with the minor child. The minor child visited with Father periodically, pursuant to the terms of the California order, and at such other times as agreed by the parties.

The arrangement continued without incident until February 2009. At that time, according to Mother, she became a victim of identity theft. She believed that her second husband was involved and was determined to create further problems for her. Mother alleges that these difficulties caused her to contact Father to temporarily assume custody of the minor child for an extended period, until the difficulties were resolved. Father agreed to assume custody, and on February 1, 2009, the minor child flew to Father's home in Pennsylvania. Father then enrolled the minor child in the Boyertown School District where the minor child completed the 2008-2009 school

---

1. Case no. D 470841.

year. In the meantime, on February 13, 2009, Mother moved from her residence to her parent's residence in Arizona, where she continues to reside. Shortly, thereafter, the problems became more severe, as her condominium was vandalized, suffering significant damage.

The vandalism and accompanying safety concerns delayed Mother's return to San Diego. However, Mother intends to resume her residence in San Diego on or before Thanksgiving 2009, although she is still not certain, for safety reasons, whether she will move back to the same residence or find suitable other lodging.

Father's position is that the transfer of custody on February 1, 2009 was intended to be permanent. He testified that this was his understanding based on conversations he had with Mother, whom he claims was motivated to relinquish custody because of difficulties with the minor child. Father states that there was no discussion about Mother's issues with her second husband until after Father had assumed custody of the minor child and that those issues were not a basis for the transfer of custody.

During the summer of 2009, the parties made arrangements for the minor child to fly to Mother's home in Arizona, which took place on July 31, 2009. According to Father, the minor child was sent to Arizona to visit with Mother in accordance with the new unwritten agreement, with the understanding that Mother was to return the minor child in time for the minor child to resume school in Boyertown, Pennsylvania. However, Mother never returned the minor child. Accordingly, Father filed

the within emergency petition on August 28, 2009, requesting the court order Mother to return the minor child immediately. Mother's preliminary objections followed, contending that Pennsylvania has no jurisdiction and that the State of California is the proper court to hear these matters.

The Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), 23 Pa.C.S. §§5401-5457, governs disposition of the within jurisdictional issue. Because California had exercised jurisdiction and issued a custody order which remains in full force and effect, the threshold question is whether this court has authority to modify the California order. Section 5423 of the UCCJEA provides:

"Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth may not modify a child custody determination made by a court of another state unless a court of this Commonwealth has jurisdiction to make an initial determination under section 5421(a)(1) or (2) (relating to initial child custody jurisdiction) and:

"(1) the court of the other state determines it no longer has exclusive, continuing jurisdiction under section 5422 (relating to exclusive, continuing jurisdiction) or that a court of this Commonwealth would be a more convenient forum under section 5427 (relating to inconvenient forum); or

"(2) a court of this Commonwealth or a court of the other state determines that the child, the child's parents

and any person acting as a parent do not presently reside in the other state."

No evidence was presented that the California court has taken any action on this jurisdictional issue. Accordingly, it is incumbent upon this court to first address section 5423(2) and determine whether the minor child and the parties "do not presently reside" in California.

Father has not been a resident of California since 2005. Mother contends that both she and the minor child remain domiciled in California, that her separation from California is temporary, and that she will return to California permanently on or before Thanksgiving 2009. It is also clear, however, that Mother and the minor child have not physically resided in California since February 2009, a period of over six months at the time Father filed the within petitions in Pennsylvania.

The phrase "do not presently reside" appearing in section 5423(2) is explained in the Uniform Law Comment to section 5422 of the UCCJEA, companion section to section 5423, to mean that the parties and the child are not physically residing in that state and is not used in the sense of a technical domicile. As noted by the Pennsylvania Superior Court in a similar case, *Wagner v. Wagner,* 887 A.2d 282, 286-87 (Pa. Super. 2005) (citation omitted), construing the term "residence" in section 5422, the court stated: "The classic legal definition of the term 'residence' in this Commonwealth is 'living in a particular place, requiring only physical presence.'" As stated, neither of the parties, nor the minor child, had resided in California for over six months. The fact that

Mother has a continuing interest in her condominium and has expressed the intention to return to California in the near future is not sufficient to establish present residence under section 5423(2).

The record having satisfied the threshold requirement of section 5423(2), we turn to whether the Commonwealth would have jurisdiction to make an initial determination under §5421(a)(1) or (2), if Pennsylvania were the initial child custody jurisdiction. Section 5421 sets forth:

"*(a) General rule.*—Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth has jurisdiction to make an initial child custody determination only if:

"(1) this Commonwealth is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this Commonwealth but a parent or person acting as a parent continues to live in this Commonwealth;

"(2) a court of another state does not have jurisdiction under paragraph (1) or a court of the home state of the child has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum under section 5427 (relating to inconvenient forum) or 5428 (relating to jurisdiction declined by reason of conduct) and:

"(i) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a

significant connection with this Commonwealth other than mere physical presence; and

"(ii) substantial evidence is available in this Commonwealth concerning the child's care, protection, training and personal relationships;

"(3) all courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this Commonwealth is the more appropriate forum to determine the custody of the child under section 5427 or 5428; or

"(4) no court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2) or (3).

"*(b) Exclusive jurisdictional basis.*—Subsection (a) is the exclusive jurisdictional basis for making a child custody determination by a court of this Commonwealth.

"*(c) Physical presence and personal jurisdiction unnecessary.*—Physical presence of or personal jurisdiction over a party or a child is not necessary or sufficient to make a child custody determination."

Home state is defined in section 5402 of the UCCJEA as follows:

" 'Home state.' The state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child six months of age or younger, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period."

In her preliminary objections, Mother argues that Pennsylvania was never established as the home state of the minor child because the minor child did not reside in Pennsylvania for at least six consecutive months prior to the filing of the within petitions. It is undisputed that the minor child was physically present in Pennsylvania from February 1, 2009 through July 31, 2009.

Computation of months is governed by the Statutory Construction Act of 1972, specifically section 1910,[2] which states:

"Whenever in any statute the lapse of a number of months after or before a certain day is required, such number of months shall be computed by counting the months from such day, excluding the calendar month in which such day occurs, and shall include the day of the month in the last month so counted having the same numerical order as the day of the month from which the computation is made, unless there be not so many days in the last month so counted, in which case the period computed shall expire with the last day of such month."

Accordingly, for the minor child to have resided in Pennsylvania for at least six consecutive months, commencing February 1, 2009, he would have had to have been physically present in Pennsylvania at least through August 1, 2009. This was not the case.

Additionally, the minor child's residency in Pennsylvania cannot be argued to extend beyond July 31, 2009.

---

2. 1 Pa.C.S. §1910.

If the parties did indeed enter into an agreement to transfer primary custody to Father, as Father suggests, and that agreement were enforceable, then the minor child's absence from Pennsylvania commencing July 31 would be considered a temporary absence, and the six months necessary for Pennsylvania to be considered a home state could subsequently have been established. However, if the informal agreement does exist, it is unenforceable. Parents cannot by agreement between them nullify an order nor oust the jurisdiction of a court in custody proceedings. *Commonwealth ex rel. Scholtes v. Scholtes,* 187 Pa. Super. 22, 25, 142 A.2d 345, 347 (1958). This is because a private agreement between the parties, without ratification by the court, is voidable by either party, and not binding on the court. *In re Custody of Neal,* 260 Pa. Super. 151, 156, 393 A.2d 1057, 1059 (1978). If the parties had intended to modify the agreement in accordance with this private understanding, they should have obtained a modification of the California order. As the California order was never modified, it remains in full force and effect and its terms are enforceable. Accordingly, when Mother resumed custody on July 31, 2009, it was in accordance with her rights under the California order. Thus, as of July 31, 2009, the minor child ceased residing in Pennsylvania and began residing in Arizona.

While Pennsylvania cannot, therefore, be considered the home state of the minor child as of the filing of the within petitions, neither can California. As stated, Father filed his petitions on August 28, 2009. More than six months had passed since the minor child left California on February 1, 2009. California's version of the Uniform

Child Custody Jurisdiction and Enforcement Act[3] contains identical provisions to Pennsylvania, also requiring that the minor child be residing in the state "within six months before the commencement of the proceeding,"[4] if California is to have jurisdiction on the basis that it is the home state of the child when the minor child does not currently reside there.

When no state qualifies as a home state, the Pennsylvania UCCJEA provides for jurisdiction under the "significant connections test," set forth in section 5421(a)(2).[5] Here, the determination is whether the minor child has such "significant connections" with Pennsylvania such that this court's exercise of subject matter jurisdiction would be proper. *Wagner,* 887 A.2d at 288-89.

When comparing the significant connections of two states, the concern is which state has the "greater degree of connection" with the child. *Id.* at 289. The Superior Court in *Wagner* elaborates:

"When analyzing the UCCJEA's predecessor, the Uniform Child Custody Jurisdiction Act (UCCJA), 23 Pa.C.S. §§5341-5366,[FN6] we described the purpose of the 'significant connections' test as follows:

"FN6. The UCCJA was repealed by 2004, June 15, P.L. 236, no. 39, §2, effective August 16, 2004, and re-enacted with revisions as the UCCJEA.

"(The test's) *purpose is to limit jurisdiction* rather than to proliferate it. The first clause of the paragraph is im-

---

3. West's Annotated California Family Code §§3400-3465.

4. West's Ann.Cal.Fam. Code, §3421.

5. California's provisions are the same. West's Ann.Cal.Fam. Code, §3421(2)(A)(B).

portant: jurisdiction exists only if it is in the child's interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be *maximum* rather than *minimum* contact with the state.

"See *Lucas [v. Lucas]*, 882 A.2d 523 (Pa. Super. 2005). (footnote and citations omitted)" *Id.* (emphasis in original)

When comparing the two states, it is apparent that California has significantly greater connections than Pennsylvania. From his birth until February 1, 2009, the minor child resided in California with his mother and during certain periods with his father. He attended school there. He likely developed friendships with other children both in school and in his neighborhood. His medical and dental care were performed in California. In contrast, his contacts with Pennsylvania have been for a period of just short of six months, plus the periodic visits he had in accordance with the California order. His father and the paternal grandparents reside in Pennsylvania. His school experience in Pennsylvania lasted from February through June 2009.

We also note that in processing the previous custody action, the California court relied upon a licensed clinical psychologist and marriage and family therapist, who conducted an evaluation of the parties and the minor child and forwarded a recommendation to the court, which became a factor in the court's determination. As such, the California court has the benefit of having already conducted an extensive review of this matter. For

all of these reasons, it is clear that California has had a greater connection to the minor child than Pennsylvania.

A case with somewhat similar facts is *McCoy v. Thresh*, 862 A.2d 109 (Pa. Super. 2004). In that case, the 7-year-old child of the parties resided in California for his entire life, with the exception of a five and a half-month period when father had refused to return the child after a visit, until mother came and retrieved the child. In consideration of father's custody complaint, the Pennsylvania trial court declined jurisdiction. On appeal, the Superior Court: affirmed the trial court, agreeing with the court that Pennsylvania was not the child's home state, and also that the child lacked significant contacts with the state. The child had lived his entire life in California with the exception of five and one-half months after the parties' separation. Significantly too, the majority of the witnesses with information as to the child's best interest, *i.e.,* "doctors, teachers, child care providers, and those familiar with the parenting abilities of the parties" were located in California. *Id.* at 114.

For the aforesaid reasons, we decline to exercise jurisdiction on Father's petitions. We, therefore, dismiss Father's petitions, without prejudice, to having them refiled in the State of California. We enter the following order:

## ORDER

And now, October 22, 2009, upon consideration of the preliminary objections of defendant, Bree F. Erb, to the petitions of plaintiff, Travis C. Hunter, to modify a child custody order and emergency petition for special relief,

response thereto, briefs filed by the parties, and after hearing held, the preliminary objections are sustained. The aforesaid petitions are hereby dismissed.