J-S31017-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: L.H.M.T., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF: A.M.H., MOTHER | No. 1971 MDA 2014 |

Appeal from the Order entered October 20, 2014,
in the Court of Common Pleas of Centre County,
Civil Division at No(s): CP-14-DP-0000029-2014

BEFORE: BENDER, P.J.E., ALLEN, and WECHT, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED MAY 29, 2015**

A.M.H. ("Mother") appeals from the trial court's order denying her motion to transfer dependency proceeding to Ohio. We affirm.

The trial court recounted the pertinent facts and procedural history as follows:

> [Mother] is the biological mother of a minor child, L.H.M.T., [("the child"),] who was born on September 18, 2014. W.T. ("Father") is the biological father of the child. CYS has a long history with both parties, most recently involving their daughter T.H.R.M.T. (D.O.B. May 25, 2010) who was declared dependent in 2012. [Mother] additionally has two older children, G.E.B. and C.A.B., who are not in her custody.
>
> CYS most recently became involved with the family on July 5, 2012 after [Mother] was involved in a car accident while she was driving with T.H.R.M.T. in her car. [Mother] was suspected of being under the influence at that time, which she claimed was related to her use of prescribed Methadone as a result of her on-going recovery from her heroin addiction. On July 19, 2012, CYS conducted an unannounced home visit with [Mother], Father and

T.H.R.M.T. At the time of the visit, [Mother] was visibly intoxicated and unable to care for her daughter. [Mother] indicated that Father had recently used heroin and had held a gun to her head on the evening of July 18, 2012. Due to these events, on July 20, 2012, the Court granted CYS's dependency petition and ordered that T.H.R.M.T. remain in foster care until a dependency hearing. A dependency hearing was held on August 1, 2012 and T.H.R.M.T. was declared dependent under the Pennsylvania Juvenile Act at 42 Pa.C.S.A. § 6302. On October 14, 2013, after a review hearing, the Court ordered that T.H.R.M.T.'s placement goal be changed from "Return Home" to "Long-Term Foster Care" due to the parents' failure to progress toward alleviating the circumstances that necessitated the original placement. Reunification services were terminated by the Court on November 5, 2013, and the Superior Court ultimately affirmed the decision after Mother appealed.

On June 9, 2014, CYS was informed that [Mother] was pregnant with her fourth child. The referral source indicated concerns regarding lack of prenatal care, poor hygiene, and [Mother's] long history with CYS. CYS attempted to contact [Mother] numerous times but was unable to do so. On July 17, 2014, prior to a visit with T.H.R.M.T., a CYS caseworker attempted to interview [Mother] about her pregnancy but she was uncooperative. On August 20, 2014, CYS obtained information that [Mother] continued to reside in Centre County and Father was the biological father of the unborn baby.

On September 17, 2014, CYS received information that [Mother] was scheduled to be induced at Doctors Hospital in Columbus, Ohio. At the time of her admission to the hospital, she confirmed that her address was 316 Park Avenue, Bellefonte, Pennsylvania, 16823. [The child] was born on September 18, 2014. Due to [Mother] confirming her residence at that time as Centre County, the Franklin County, Ohio, Children and Youth Services Office refused to accept jurisdiction. CYS then obtained an emergency custody order for the placement of [the child]. On September 19, 2014, [Mother] refused to identify [the child's] father despite the fact that Father was present for the birth. On September 20, 2014, [the child] began to experience symptoms of opiate withdrawal.

The Court held a hearing on October 2, 2014, at which time counsel for both parents orally objected to jurisdiction.

Trial Court Opinion, 12/10/14, at 1-3.

By order entered October 20, 2014, the trial court denied the parties' oral motion to transfer jurisdiction. After an October 30, 2014 hearing, the trial court issued an order adjudicating the child to be dependent pursuant to the Pennsylvania Juvenile Act, 42 Pa.C.S.A. § 6302. This timely appeal followed.[1] Both Mother and the trial court have complied with Pa.R.A.P. 1925.

Mother raises a single issue for our review:

I. Did the [trial] court err by refusing to transfer dependency proceedings to Ohio, where jurisdiction properly lies?

Mother's Brief at 4.

Pennsylvania's version of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") includes dependency proceedings within the definition of a "child custody proceeding." *See* 23 Pa.C.S. § 5402. Our standard of review is well settled:

A court's decision to exercise or decline jurisdiction is subject to an abuse of discretion standard of review and will not be disturbed absent an abuse of that discretion.

---

[1] Although Father also filed a timely appeal, on April 20, 2015, we granted his request to withdraw and discontinue it. *See **In the Interest of L.H.M.T., a Minor***, No. 1972 MDA 2014.

Under Pennsylvania law, an abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings. An abuse of discretion requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper procedures.

*Wagner v. Wagner*, 887 A.2d 282, 285 (Pa. Super. 2005).

In support of her appeal, Mother provides the following single-paragraph argument:

Pursuant to Section 3130.41(2)(i) of Title 55, 55 Pa. Code § 3130.41(2)(1), the Interstate Compact on the Placement of Children controls in situations of interstate transfer. Specifically, it is mandated that a county agency apply for and receive approval from the receiving state prior to sending a child to placement in another state. Said approval process is to be initiated through the Interstate Office of the Department. No such approval process was completed, or even initiated, in the instant matter. [CYS] removed [the child] from her home state of Ohio without any authority to do so. The trial court notes in its [PA.R.A.P. 1925(a) opinion] that "CYS presented evidence showing that [the child] resides in Pennsylvania." [Mother] maintains that [the child] resides in Pennsylvania due only to an unlawful transfer.

Mother's Brief at 7.

The trial court rejected Mother's claim and explained that it properly exercised jurisdiction:

The Court determined after a hearing that it had jurisdiction pursuant to Section 6321 of the Juvenile Act. 42 Pa.C.S.A. § 6321. CYS presented evidence showing that [the child] resides in Pennsylvania. [The child's] address was identified as the Bellefonte, Pennsylvania address. [Mother] paid for the medical expenses associated with the birth of her child through [the]

- 4 -

> Pennsylvania Department of Public Welfare Benefits. CYS workers contacted Franklin County, Ohio [CYS], who confirmed that Centre County [CYS] had jurisdiction over the child. As of the hearing held October 30, 2014, [Mother] continued to receive drug addiction treatment in State College and worked at Denny's in State College. Additionally, [Mother] eventually informed CYS that Father is [the child's] biological father. He told CYS that they could use his mother's address in Ohio for all mail, but mail that CYS sent to that address was returned.

Trial Court Opinion, 12/10/14, at 3. Our review of the certified record supports the trial court's jurisdictional determination.

Mother's reliance on Section 3130.41(2)(i) of Title 55 of the Pennsylvania Code section is inapt. Section 761 of the Pennsylvania Public Code, the Interstate Compact on the Placement of Children ("ICPC"), is implemented under the pertinent Pennsylvania Code provisions, including Section 3130.41. The history leading to the enactment of the ICPC has been summarized:

> In the 1950's [sic] social service administrators from several states explored common problems arising from the interstate care and placement of children in foster care or adoptive homes. Three difficulties were noted: (1) the failure of importation and exportation statutes to provide protection for children moved interstate; (2) the territorial limitations of a state's jurisdiction and the powerlessness of a sending state to ensure proper care and supervision in the receiving state; [and] (3) the absence of a means to compel the receiving state to provide services in support of placement for foster care and adoption.

> In 1960 the Council of State Governments proposed adoption of an Interstate Compact. This vehicle was recommended because when a child was sent out of state, that state of origin lost jurisdiction over the child and supervision became difficult or impossible. Through a

compact the authority of participating states would be extended beyond their borders. In outlining the suggested program, the Council explained, "The compact provides procedures for the interstate placement of children (either by public agencies or by a private person or agencies) when such placement is for foster care or as a preliminary to possible adoption."

As drafted, the [ICPC] provides for notification of appropriate state or local authorities in the receiving state before placement by out-of-state persons and agencies. The authorities in the receiving state are given the opportunity to investigate and, if satisfied, must notify the sending state that the proposed placement does not appear to be contrary to the child's best interest. After a placement has been made, the sending state continues to have financial responsibility for support and retains jurisdiction over the child.

*McComb v. Wambaugh*, 934 F.2d 474, 479-480 (3d Cir. 1991).

Here, there was no "interstate transfer," because Ohio – the alleged "sending state" – refused to exercise jurisdiction over the child based on evidence of Mother's Pennsylvania residency. Mother claims that Ohio is the child's "home state" because "[the child] was born in Ohio. [Father] had been living in Ohio for quite some time, and [Mother] recently had moved there." Mother's Brief at 5. The trial court rejected this assertion and instead credited the ample evidence that refuted Mother's jurisdictional claim. *See* Trial Court Opinion, 12/10/14, at 5. Because our review of the certified record supports the trial court's factual conclusions, we cannot disturb this determination. *See In the Interest of C.R.*, 111 A.3d 179, 182 (Pa. Super. 2015) (explaining that the applicable "standard of review in dependency cases requires an appellate court to accept the findings of fact

and credibility of the trial court if they are supported by the record")
(citation omitted).

For the foregoing reasons, we affirm the trial court's order regarding jurisdiction in this dependency proceeding.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/29/2015