J-A24045-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| T.W., JR., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| A.A., | |
| Appellee | No. 1313 EDA 2014 |

Appeal from the Order Entered March 19, 2014
in the Court of Common Pleas of Monroe County
Domestic Relations at No.: 182 DR 2013, 1710 CV 2013

BEFORE:   GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                **FILED OCTOBER 10, 2014**

T.W., Jr., (Father), appeals the order of the Court of Common Pleas of Monroe County, entered March 19, 2014, in which the court determined that the Supreme Court of New York, in the County of New York, is the more convenient forum, and by which it transferred jurisdiction to that court pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), 23 Pa.C.S.A. § 5427(a).  We affirm.

On February 14, 2013, Father, on behalf of T.E.W., III (Child), filed a Protection from Abuse (PFA) Petition in which he sought an order for protection for Child against Child's mother, A.A. (Mother), as well as a temporary order of custody of Child pending a hearing.  The trial court

_____

[*] Retired Senior Judge assigned to the Superior Court.

scheduled a hearing on Father's petition for February 19, 2013, but continued the hearing at Mother's request.[1]

Mother filed a divorce complaint in the Supreme Court of New York on February 25, 2013, and, on February 28, 2013, filed an affidavit in support of an order to show cause that was filed seeking an order of protection as well as temporary custody of Child. In response, the Supreme Court of New York entered an *ex parte* temporary order of protection on March 1, 2013, that prohibited Father from having any contact with Mother and awarded Mother custody of Child.

The trial court entered a final PFA order against Mother when she failed to appear for the PFA hearing on March 4, 2013. On March 14, 2013, Mother filed an expedited motion to vacate that PFA order and to dismiss the temporary award of custody for lack of jurisdiction. At a hearing on March 25, 2013, the trial court, after determining that Mother was not served properly with notice of the re-scheduled PFA hearing, dismissed the March 4, 2013, PFA without prejudice.

At the same March 25, 2013 hearing, the trial court also addressed jurisdiction under the UCCJEA and issued an order on March 27, 2013, in

---

[1] At hearing on March 25, 2013, Mother represented that she contacted the Victim/Witness Advocate who requested, on Mother's behalf, that the matter be continued. The February 19, 2013 PFA hearing was re-scheduled for March 4, 2013.

which it determined that Pennsylvania was Child's home state. In response, Mother filed an action in the Supreme Court of New York requesting court-to-court communication pursuant to the UCCJEA. The trial court and the Supreme Court of New York conferred and agreed that a joint hearing was appropriate. As a result, the two courts held full evidentiary hearings on November 21, 2013, February 21, 2014, and March 10, 2014.

After these joint hearings, on March 19, 2014, the trial court entered an order declining jurisdiction in Pennsylvania as an inconvenient forum pursuant to 23 Pa.C.S.A. § 5427(b), determining that the Supreme Court of New York was a more appropriate forum, and directing that all future proceedings be filed and heard in that court. Father filed a notice of appeal on April 15, 2014, and an amended notice of appeal on April 16, 2014, which included his statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(a)(2)(i). The court filed an opinion on May 6, 2014 and a supplemental opinion on May 9, 2014. *See* Pa.R.A.P. 1925(a)(2)(ii).

Father presents the following questions for our review:

1. Did the [trial court] erred [sic] in determining that New York is the more convenient forum and in transferring jurisdiction in this matter to the Superior Court of New York, County of New York[,] pursuant to 23 Pa.C.S. Section 4527(a) where, as here:

(a) [t]he [trial c]ourt had previously determined, following [h]earing, that jurisdiction was appropriate in Monroe County, Pennsylvania and that Pennsylvania was the home county [sic] of [Child];

- 3 -

(b) [Mother's] appeal from the aforesaid decision establishing Pennsylvania as the home county [sic] of [Child] was voluntarily withdrawn;

(c) [t]he significant lapse in time between the [trial court's] initial determination regarding jurisdiction and its ultimate decision to transfer jurisdiction pursuant to the Order of March 19, 2014 was due solely and exclusively to the conduct of [Mother] and to errors and omissions on the part of the [t]rial [c]ourt and/or its administrative offices as opposed to any actions or inactions of [Father]; and,

(d) [a]ny 'significant connections' between [Child] and/or the facts and circumstances in this matter and the State of New York were artificially created by [Mother] who removed [Child] to the State of New York following the initiation of the underlying Pennsylvania custody action and who's [sic] conduct was assisted by the aforesaid errors and omissions on the part of the [t]rial [c]ourt and/or its administrative offices[?]

2. Did the [trial court] erred [sic] in determining that New York is the more convenient forum and in transferring jurisdiction in this matter to the [Supreme] Court of New York, County of New York[,] pursuant to 23 Pa.C.S. Section 4527(a) where, as here:

(a) [t]he [trial court] ignored and overlooked material facts relating to the issue of 'domestic violence' including, but not limited to, its prior Order granting [Mother] exclusive possession of the marital residence in Pennsylvania;

(b) [t]he evidence clearly establishes Pennsylvania as the more convenient forum for the instant custody action pursuant to the factors set forth in 23 Pa.C.S. Section 4527(b)(3) & (4); and[,]

(c) [t]here is neither a legal and/or factual basis to support the [trial court's] finding that New York has 'equal familiarity' with the facts of this case thus rending [sic] it the more convenient forum?

3. Did the [trial court] violate 23 Pa.C.S. Section 5410(d) by failing to create a record of its telephonic communications with

the New York Court following the conclusion of the last day of hearing on the issue of inconvenient forum?

(Father's Brief, at 4-5).

Our standard of review for decisions involving jurisdiction is as follows:

> A court's decision to exercise or decline jurisdiction is subject to an abuse of discretion standard of review and will not be disturbed absent an abuse of that discretion. Under Pennsylvania law, an abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings. An abuse of discretion requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures.

*Wagner v. Wagner*, 887 A.2d 282, 285 (Pa. Super. 2005) (citation omitted).

Our scope and standard of review in custody matters is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F., III v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

We have stated,

> [T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the

> special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

The primary concern in any custody case is the best interests of the child. "The best interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citing *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004)).

We must accept the trial court's findings that are supported by competent evidence of record, and we defer to the trial court on issues of credibility and weight of the evidence. If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *See In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003).

We begin by noting that Mother has not filed a brief in this matter.

Father's first and second questions present the same issue: whether the trial court erred in determining, pursuant to 23 Pa.C.S.A. § 4527(a), that New York was the more convenient forum in which to litigate the custody of Child? (Father's Brief, at 4-5).

Father first argues that the trial court's finding that "there are no significant contacts in Pennsylvania regarding the care, protection, training and personal relationships of [the c]hild" was only possible because "[Mother] was permitted, by not only her own actions but, more importantly, by the [] actions and inactions of the [t]rial [c]ourt to remove [Child] to the State of New York for a period of almost a year[.]" (Father's Brief, at 17) (quoting (Trial Court Opinion, 5/06/14, at unnumbered page 4)).

In making this argument, Father ignores Mother's testimony that she has lived at a specific address in New York City "on and off since 2005." (N.T. Hearing, 11/21/13, at 15). Mother testified that she owns an eighty percent interest in that residence. (*See id.* at 16). Mother also testified that her driver's license and her immigration "green card" bear that address.[2] (*See id.* at 20-23). In addition, Mother testified that Child's only pediatrician is the one he sees in New York. (*See id.* at 37). This unrebutted testimony by Mother is sufficient evidence to permit the trial court to determine, in the absence of any contrary evidence, that Child has significant contacts to the State and City of New York.

We are also persuaded by the trial court's statement in response to Father's claim:

> Father raises the issue of the time lapse for the evidentiary hearing in this matter which permitted the Child to reside

---

[2] Mother is a permanent resident. (*See* N.T. Hearing, 11/21/13, at 22).

outside of the Commonwealth. We do not believe that this is the case, especially in light of the voluminous evidence of Mother's connection and ties to New York and Father's own testimony that Mother and Child lived, at least part time, in New York since his birth. We are not persuaded by Father's argument that Mother artificially created contacts in New York to avoid the Pennsylvania forum.

(Trial Ct. Op., 5/06/14, at unnumbered page 6).

Father also argues that the trial court abused its discretion in finding that Child has significant contacts with New York because that finding contradicts the trial court's finding, in its order of March 27, 2013, that Pennsylvania is Child's home state. (Father's Brief, at 15-17). We find no abuse of discretion where this change in the trial court's finding occurred after three days of evidentiary hearings. Our review of the record reveals that sufficient evidence was presented during those hearings to support the trial court's new finding.

In his second issue, Father claims that the trial court misapplied six of the eight factors a trial court must consider when deciding the question of forum non-convenience. (Father's Brief, at 18). The eight factors are:

(1) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(2) the length of time the child has resided outside this Commonwealth;

(3) the distance between the court in this Commonwealth and the court in the state that would assume jurisdiction;

(4) the relative financial circumstances of the parties;

(5) any agreement of the parties as to which state should assume jurisdiction;

(6) the nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

(7) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

(8) the familiarity of the court of each state with the facts and issues in the pending litigation.

23 Pa.C.S.A. § 5427(b).

Father claims that the trial court abused its discretion in determining that factors 1, 2, 3, 6, 7, and 8 weighed in favor of Mother. (Father's Brief, at 18). Father supports this claim, however, by examining the evidence presented and asking us to reach a conclusion different from that reached by the trial court. (Father's Brief, at 18-24). This we may not do. We must accept the trial court's findings that are supported by competent evidence of record, and we defer to the trial court on issues of credibility and weight of the evidence. If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *See In re Adoption of T.B.B.*, *supra* at 394.

> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*S.M. v. J.M.*, 811 A.2d 621, 623 (Pa.Super. 2002) (quoting *Robinson v.*

*Robinson*, 645 A.2d 836, 838 (Pa. 1994)).

That said, we quote the trial court's findings regarding the eight

factors, with approval. Our review reveals that the record supports the

findings set forth here:

> We begin with the domestic violence which has occurred in this case. Father initially filed a PFA petition, however at the PFA hearing held on April 29, 2013, Father withdrew his PFA and Father did not object to the entry of a PFA against him in favor of Mother. At that hearing[,] Mother testified that charges against Father were bound over for the Court of Common Pleas on charges of aggravated assault. The assault was allegedly committed by Father against Mother. We are familiar with criminal charges pending against Father in this [c]ourt at docket 953 CR 2013, which remain unresolved. In New York, a request for an Order of Protection petition was filed by Mother against Father for violence against Mother at her New York apartment. We believe that this violence may continue to occur in the future.
>
> In regards to the second factor, the Child has resided in Pennsylvania and New York. Mother testified credibly that the Child has always resided with her in New York, albeit many weekends were spent in her Pennsylvania home. The Child attends school in and all of his medical providers are located in New York. Child's care and personal relationships are established in New York. Although Mother owns a residence in Pennsylvania, there are no significant contacts in Pennsylvania regarding the care, protection, training and personal relationships of Child.
>
> Factor three requires this [c]ourt to consider the distance between this [c]ourt and the New York Supreme Court. Mother testified that it is a two[-]hour car ride which we do not consider to[o] burdensome. Father has had several visits with Child in a supervised setting in both New York and Pennsylvania. Father has not objected to traveling to New York for these visits. Given the nature and location of the evidence in New York and

considering the Child's best interest, we believe that New York is the more convenient forum.

We are also required to consider the relative financial circumstances of the parties. Although we found that the relative financial circumstance of Mother exceeds that of Father, we believe that the pending criminal charges and history of domestic violence outweighs any advantage for Father under this factor. This is the only factor which we believe may weigh in favor of Father. Nevertheless, we conclude that the weight of this factor is greatly outweighed by the other relevant factors which we must consider.

Factor five is not relevant and we find that factor six weighs in favor of the New York forum. The testimony at the joint hearings revealed that Mother has significant ties to New York. Mother produced evidence that she has been a resident of New York for several years. Mother testified credibly that she has an ownership interest in an apartment on West Broadway, New York, NY, as well as a home in Monroe County. She stated that she lives primarily in New York, however until this litigation commenced, she spent many weekends at her Pennsylvania home. Mother maintains a New York driver's license and attends Fashion Institute of Technology in New York. There was no evidence that the Child had any medical providers in Pennsylvania, except on an emergency basis. There was no evidence of any caregivers, day care providers or other significant connections of the Child with Pennsylvania with the exception that Mother owns a home in Monroe County and she was granted exclusive possession of that residence.

In regards to factors seven and eight, we believe that both [c]ourts have equal familiarity with the facts and issues present in this matter; and that each [c]ourt has the ability to decide the issue expeditiously to resolve the pending litigation.

(Trial Ct. Op., 5/06/14, at unnumbered pages 4-6).

In his third issue, Father complains that the trial court violated the provisions of 23 Pa.C.S.A. § 5410 in that the two courts conferred off the record and the trial court entered the order complained of without informing

the parties of the substance of the discussion between the two courts. (Father's Brief, at 24-26). Section 5410 of the UCCJEA provides in pertinent part:

**(a)** **General rule.–**A court of this Commonwealth may communicate with a court in another state concerning a proceeding arising under this chapter.

**(b)** **Participation of parties.–**The court may allow the parties to participate in the communication. If the parties are not able to participate in the communication, they must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made.

**(c)** **Matters of cooperation between courts.–** Communication between courts on schedules, calendars, court records and similar matters may occur without informing the parties. A record need not be made of the communication.

**(d)** **Record.–**Except as otherwise provided in subsection (c), a record must be made of a communication under this section. The parties must be informed promptly of the communication and granted access to the record.

23 Pa.C.S.A. § 5410(a)-(d).

In response to Father's complaint, the trial court stated:

After the hearings in this matter, the only communication involved this [c]ourt advising the New York Court of our intention to decline jurisdiction as an inconvenient forum pursuant to 23 Pa. C.S.A. §5427, and to inquire whether New York would assume jurisdiction, of which there was no record. We considered this matter to fall squarely within the confines of 23 Pa. C.S.A.§5410(c).

(Trial Court Supplemental Opinion, 5/09/14, at unnumbered pages 1-2).

We agree with the trial court that the post-hearing conduct of the two courts falls squarely within the exception of subsection (c). The trial court

did not violate section 5410 of the UCCJEA when it failed to make a record of its post-trial communication with the New York court.

Accordingly, for the reasons stated, we affirm the order of the trial court entered March 19, 2014.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/10/2014