J-S67016-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| N.A.-D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| A.A.-S. | : | |
| | : | |
| Appellant | : | No. 1410 MDA 2019 |

Appeal from the Order Entered July 30, 2019
In the Court of Common Pleas of Franklin County Civil Division at No(s):
2019-650

BEFORE:   OLSON, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                 **FILED JANUARY 29, 2020**

Appellant, A.A.-S. ("Father") appeals from the July 30, 2019 Order entered in the Franklin County Court of Common Pleas that, *inter alia*, awarded Appellee, N.A.-D. ("Mother"), primary physical custody of S.A.S. ("Child") after the trial court determined that it had jurisdiction to make an initial custody determination under Section 5421(a) of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), 23 Pa.C.S. § 5401-5482.  Upon careful review, we affirm.

The relevant procedural and factual history follows.  Father and Mother, who are parents to Child, are both originally from Jordan.  Father has lived in Texas for over twenty years, and had been a United States (U.S.) citizen for over twelve years.  After Father and Mother were married in Jordan in 2015,

_____

[*] Former Justice specially assigned to the Superior Court.

Mother came to Texas on a tourist visa to live with Father. In April 2016, Child was born in Texas and in July 2016, Mother returned to Jordan to renew her visa. Child remained in Texas with Father until November 2016 when immigration authorities permitted Mother to return to the U.S. Father, Mother, and Child resided together in Texas until April 2017 when the parties separated and Mother and Child traveled to Jordan with Father's knowledge and consent.

One year later, in April 2018, Mother returned to Texas with Child in an attempt to reconcile the marriage and surprise Father for his birthday. Mother and Child stayed in a hotel and Father visited frequently. After ten days, Mother and Child left Texas abruptly without notifying Father and traveled to Philadelphia, Pennsylvania to reside temporarily and consult with a family-recommended immigration attorney. During this time, Mother lied to Father and told him that she had returned to Jordan. Following Mother's departure, Father coordinated with the Jordanian embassy to obtain a divorce.

Mother subsequently applied for U.S. citizenship under the Violence Against Women Act ("VAWA"), alleging that Father was physically and emotionally abusive. Mother received a response letter dated June 7, 2018, which determined that Mother had a *prima facie* case and informed her that a final determination would be made regarding her immigration status in the next eighteen to twenty-four months.

In July 2018, after a mutual acquaintance introduced Mother to Sheryl Lahdu, Mother and Child moved to Franklin, Pennsylvania, to reside in Ms.

Lahdu's basement apartment rent-free, where Mother and Child continue to reside.

On February 15, 2019, Mother filed a Complaint for Custody. In response, on March 14, 2019, Father filed Preliminary Objections challenging jurisdiction and service and requesting that the trial court dismiss the Custody Complaint for lack of personal jurisdiction of Father. On March 22, 2019, after a hearing, the trial court denied Father's Preliminary Objections and found that it had jurisdiction to hear the custody dispute.

On July 15, 2019, the trial court held a custody hearing and heard testimony from Mother; Ms. Lahdu; Janet Hinshaw-Thomas, Director of the Prime-Ecumenical Commitment to Refugees; Father; and Father's mother.

In sum, during the hearings, the trial court heard testimony that Mother participates in community activities with the now-three-year-old Child, applied for state benefits and preschool for Child, is able to live in her current apartment indefinitely, intends to obtain employment once she obtains permanent U.S. citizenship, and plans to reside in Pennsylvania permanently. Mother testified that Father physically and emotionally abused her during their relationship, that he refused to fill out immigration paperwork on her behalf, and that he often threatened to keep Child in the U.S. when Mother was deported.

Father testified that for the past seven years he has been employed as an engineer for a Japanese company called IDET and that he works from home a majority of the time. Father lives in a five-bedroom home with his mother

and his teenage daughter from a previous marriage. Father denied physically and emotionally abusing Mother, and testified that he failed to fill out Mother's immigration paperwork because their relationship was rocky and he did not want to be dishonest with immigration authorities if they were going to get a divorce. Father did not know that Mother and Child were residing in Pennsylvania and he testified that he made various efforts to locate Mother and Child when they left Texas in April 2018, including contacting law enforcement, private investigators, and the Jordanian embassy. Father discovered Mother and Child's whereabouts when Mother filed a Complaint for Custody.

On July 30, 2019, the trial court held a hearing to announce its custody decision. After the trial court reviewed the 23 Pa.C.S. § 5328 custody factors on the record, the court awarded Mother and Father shared legal custody of Child, Mother primary physical custody of Child, and Father periods of partial physical custody. Specifically, the trial court ordered that Father could exercise partial physical custody of Child at any time in Franklin County, and for periods of three consecutive weeks every three months in Texas. The Order stated that, for the first year, Mother shall accompany Child to Texas for visitation and Father shall pay for all associated transportation and hotel costs.

Father timely appealed. Father and the trial court both complied with Pa.R.A.P. 1925.

Father raises the following issues for our review:

I.      Whether the [trial] court abused its discretion in determining Pennsylvania was Child's "home state" pursuant to 23 Pa.C.S. § 5421 and, therefore, had jurisdiction, when Child, who was a resident of the state of Texas at the time, was abducted by Mother, fled Texas with Child, and secreted her whereabouts from [] Father for one year until she filed a custody action in Pennsylvania after securing her six month residency requirement?[1]

II.     Whether the [trial] court abused its discretion in not declining jurisdiction under 23 Pa.C.S. § 5428, when Child, who was a resident of the state of Texas at the time, was abducted by Mother, fled Texas with Child, and secreted her whereabouts from [] Father for one year until she filed a custody action in Pennsylvania after securing her six month residency requirement?

III.    Whether the [trial] court adequately met the requirements of delineating reasons for its custody award prior to appeal pursuant to Pa.C.S. § 5323?

IV.     Whether the [trial] court properly and adequately satisfied the requirement to consider all of the custody factors of 23 Pa.C.S. § 5323 when the court merely recited each part[y's] testimony and legal positions from the custody trial?

Father's Br. at 3 (reordered for ease of disposition; some capitalization omitted).

In his first two issues, Father challenges both the trial court's decision that it had jurisdiction to make an initial custody determination pursuant to Section 5421 of the UCCJEA and the court's decision to exercise that

_____

[1] Father failed to raise this issue in his Rule 1925(b) Concise Statement. However, we decline to find waiver because this Court may raise the issue of subject matter jurisdiction *sua sponte* and it cannot be waived. ***See Grimm v. Grimm***, 149 A.3d 77, 84 (Pa. Super. 2016) (explaining that this Court can *sua sponte* raise the issue of subject matter jurisdiction and it cannot be waived); ***M.E.V. v. R.D.V.***, 57 A.3d 126, 129 (Pa. Super. 2012) ("[i]t is well-settled that the question of subject matter jurisdiction may be raised at any time, by any party, or by the court *sua sponte)* (citation omitted).

jurisdiction despite the fact that Mother failed to disclose her and Child's location to Father when she relocated to Pennsylvania. *Id.*

We review a trial court's application of the UCCJEA for an abuse of discretion. *J.M.R. v. J.M.*, 1 A.3d 902, 908 (Pa. Super. Ct. 2010). A court's decision to exercise jurisdiction under the UCCJEA will not be disturbed absent an abuse of discretion, which "occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings." *Wagner v. Wagner*, 887 A.2d 282, 285 (Pa. Super. 2005) (citation omitted). "An abuse of discretion requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures." *Id.* (citation omitted).

Section 5241 provides, in relevant part, that a court has jurisdiction to make an initial child custody determination if "this Commonwealth is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this Commonwealth but a parent or person acting as a parent continues to live in this Commonwealth." 23 Pa.C.S. § 5421(a)(1). The statute defines the home state as "[t]he state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding [including any period of temporary absence[.]" 23 Pa.C.S. § 5402. "Thus, for home state determination, the law is clear that if a parent leaves

one state temporarily and takes the child to another state, no matter for how long, the child is still considered as having "lived" in the first state during the time of that temporary absence." ***R.M. v. J.S***., 20 A.3d 496, 507 (Pa. Super. 2011). Whether a parent's relocation constitutes a temporary or permanent absence depends on whether the relocation was "intended to be temporary or permanent." ***Id.*** at 506.

Father first argues that Texas, rather than Pennsylvania, is Child's "home state" and that the trial court erred when it failed to characterize Mother's relocation to Pennsylvania a "temporary absence" from Texas. Father's Br. at 11. This argument is nonsensical and devoid of merit.

Mother relocated to Pennsylvania in April 2018 and had been continuously residing in Pennsylvania for approximately ten months when she filed a Complaint for Custody on February 15, 2019, initiating custody proceedings. Thus, because Child lived in Pennsylvania with Mother "for at least six consecutive months immediately before the commencement of a child custody proceeding" the trial court did not abuse its discretion when it determined that Pennsylvania was Child's home state, and, therefore, that the court had jurisdiction to make an initial custody determination. ***See*** 23 Pa.C.S. § 5402; § 5421(a).

The record belies Father's claim that Mother's relocation to Pennsylvania was a temporary absence from Texas. Notably, the trial court heard evidence that Mother secured a permanent apartment, applied for benefits and preschool for Child, engaged in community activities, planned to look for

- 7 -

employment, and intended on staying in Pennsylvania permanently. Moreover, Mother did not reside in Texas preceding her relocation to Pennsylvania, but, rather, resided in Jordan for a year prior to her relocation. Accordingly, Father's first jurisdictional argument is devoid of merit.

Father next argues that the trial court erred when it decided to exercise its jurisdiction despite Mother's "unjustifiable conduct in absconding in secret to another state with Child." Father's Br. at 13. Father avers that the trial court should have declined to exercise jurisdiction pursuant to Section 5428. *Id.*

Section 5428 states, in relevant part:

**(a) General rule.--**Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction) or by other laws of this Commonwealth, if a court of this Commonwealth has jurisdiction under this chapter because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct, the court shall decline to exercise its jurisdiction unless:

(1) the parents and all persons acting as parents have acquiesced in the exercise of jurisdiction;

(2) a court of the state otherwise having jurisdiction under sections 5421 (relating to initial child custody jurisdiction) through 5423 (relating to jurisdiction to modify determination) determines that this Commonwealth is a more appropriate forum under section 5427 (relating to inconvenient forum); or

(3) no court of any other state would have jurisdiction under the criteria specified in sections 5421 through 5423.

23 Pa.C.S. § 5428(a).

In his Brief, Father argues that the comments to Section 5428 state, "This section ensures that abducting parents will not receive an advantage for

their unjustifiable conduct. If the conduct that creates the jurisdiction is unjustified, courts must decline to exercise jurisdiction." Father's Br. at 13 (citing 23 Pa.C.S. § 5428 cmt). However, Father fails to recognize that the comments to Section 5428 later explain, "**domestic violence victims should not be charged with unjustifiable conduct** for conduct that occurred in the process of fleeing domestic violence, even if their conduct is technically illegal." 23 Pa.C.S. § 5428 cmt (emphasis added).

Instantly, the trial court rejected the premise that Mother engaged in "unjustifiable conduct" and opined that "it would not be appropriate to decline to exercise jurisdiction on the basis of 23 Pa.C.S.[] § 5428 due to the allegations of abuse." Trial Ct. Op., filed 3/22/19, at 10 fn. 4 (unpaginated). We find no abuse of discretion.

In his next two issues, Father avers that the trial court abused its discretion when it failed to place specific reasons for the court's custody award on the record pursuant to 23 Pa.C.S. § 5328. Father's Br. at 3. We disagree.

This Court reviews a custody determination for an abuse of discretion. *In re K.D.*, 144 A.3d 145, 151 (Pa. Super. 2016). We will not find an abuse of discretion "merely because a reviewing court would have reached a different conclusion." *Id.* (citation omitted). Rather, "[a]ppellate courts will find a trial court abuses its discretion if, in reaching a conclusion, it overrides or misapplies the law, or the record shows that the trial court's judgment was

either manifestly unreasonable or the product of partiality, prejudice, bias or ill will." *Id.*

Further, our scope of review is broad, but we are "bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted). Importantly, "[o]n issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the witnesses." *K.T. v. L.S.*, 118 A.3d 1136, 1159 (Pa. Super. 2015) (citation omitted). We can only interfere where the "custody order is manifestly unreasonable as shown by the evidence of record." *Saintz*, 902 A.2d at 512 (citation omitted).

It is well settled that "[t]he paramount concern in child custody cases is the best interests of the child." *C.G. v. J.H.*, 193 A.3d 891, 909 (Pa. 2018). "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." *M.J.N. v. J.K.*, 169 A.3d 108, 112 (Pa. Super. 2017).

The Child Custody Act, 23 Pa.C.S. §§ 5321-5340, requires a trial court to consider all of the Section 5328(a) best interests factors when "ordering any form of custody." 23 Pa.C.S. § 5328(a). A trial court must "delineate the

reasons for its decision when making an award of custody either on the record or in a written opinion." ***S.W.D. v. S.A.R.***, 96 A.3d 396, 401 (Pa. Super. 2014). ***See also*** 23 Pa.C.S. § 5323(a), (d). However, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.***, 63 A.3d 331, 336 (Pa. Super. 2013). "A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d)." ***C.M. v. M.M.***, 215 A.3d 588, 593 (Pa. Super. 2019) (citations omitted). Notably, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen Section 5328 custody factors prior to the deadline by which a litigant must file a notice of appeal." ***Id.*** (citations omitted).

Instantly, the trial court reviewed, considered, and analyzed the Section 5328 custody factors on the record in the presence of all parties on July 30, 2019, prior to issuing its custody decision. ***See*** N.T. Hearing, 7/30/19, at 2-23. Our review of the record reveals that the trial court engaged in an analysis of each of the sixteen custody factors for more than twenty pages of transcript and made specific findings regarding each factor, which the record supports. The trial court determined, based on its consideration of the Section 5328 custody factors, that it was in Child's best interest to award primary physical custody to Mother and the record supports the trial court's findings. ***See id.*** at 16; Order, 7/30/19. Accordingly, we find no abuse of discretion.

Finally, Father avers that the trial court abused its discretion when it imposed unnecessary restrictions on his periods of partial custody for the first year.[2] *Id.* at 16-17. Specifically, the trial court ordered Father to pay for airfare and Mother's hotel costs while he is exercising his three-week periods of partial custody in Texas so that Mother can accompany Child. *Id.* at 16-17. Father argues that the trial court erred when it imposed the restrictions without identifying any safety concerns pursuant to Section 5323(e) or determining Father's financial ability to comply with the condition. *Id.* at 17-18. Upon review, this issue does not merit relief.

A trial court has the authority to impose restrictions on child custody awards. *Ferencak v. Moore*, 445 A.2d 1282, 1286-87 (Pa. Super. 1982). "A restriction will be imposed if the parties have agreed to a restriction or if the party requesting a restriction shows that without it, partial custody will have a detrimental impact on the child." *J.R.M. v. J.E.A.*, 33 A.3d 647, 653 (Pa. Super. 2011) (quoting *Fatemi v. Fatemi*, 489 A.2d 798, 801 (Pa. Super. 1985). "Once a court concludes that the imposition of a restriction is necessary, it must phrase the restriction in the least intrusive language

---

[2] Father failed to include this issue in his Statement of Questions in violation of Pa.R.A.P. 2116(a). However, Father preserved the issue in his Rule 1925(b) Concise Statement, the trial court addressed the issue in its Rule 1925(a) Opinion, and Father provides argument on the issue in his Brief. Accordingly, because our appellate review is not hampered, we decline to find waiver. *See Savoy v. Savoy*, 641 A.2d 596, 598 (Pa. Super. 1994) (declining to find waiver when an appellant's failure to comply with Rule 2116 did not impede appellate review).

reasonably needed to safeguard the child." ***Fatemi***, 489 A.2d at 801.  This Court has explained, "[b]road or nonspecific restrictions will be invalidated in favor of narrowly focused, precise restrictions that are directed toward the child's welfare." ***Id.*** at 802.

Further, pursuant to Section 5323(e), after considering the custody factors, "if the court finds that there is an ongoing risk of harm to the child or an abused party and awards any form of custody to a party who committed the abuse or who has a household member who committed the abuse, the court shall include in the custody order safety conditions designed to protect the child or the abused party."  23 Pa.C.S. § 5323(e).

Instantly, the trial court did not impose "safety conditions" pursuant to Section 5323(e) and, therefore, was not required to make any findings regarding "ongoing risk of harm to the child" under Section 5323.  Rather, the trial court imposed a time-restricted and specific restriction on three-year-old Child's visitation with Father in order to ensure that Child traveled safely and had emotional support while staying with Father for the first time in over two years.  The trial court opined:

> Father has substantial income as an engineer to be able to pay for Mother's transportation and airfare costs.  He has paid for travel and hotel costs in the past for both Mother and Child.  The court is not required to make a safety determination before entering a condition that Father pay for Mother's accommodations and airfare to assure her presence near Father's home during the first year he exercises custody.  Father's periods of custody are extended (three consecutive weeks), [C]hild is very young, she will need assistance to travel via commercial flights from Pennsylvania to Texas.  The court cannot be certain how [C]hild may react while

- 13 -

in Father's custody. Mother may need to be a resource to support [C]hild's periods of custody with Father. To have her immediately available to Father and [C]hild is of considerable importance[.]

Trial Ct. Op., filed 9/23/19, at 2 (unpaginated). Our review of the record supports the trial court's findings. The trial court imposed specific restrictions to facilitate Child's safe travel and avoid any detrimental emotional impact. Accordingly, we find no abuse of discretion.

In sum, the trial court did not abuse its discretion when it concluded that the court had jurisdiction over this custody dispute, awarded Mother primary physical custody, and awarded Father partial physical custody with restrictions.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 01/29/2020

- 14 -