J-A14038-25

2025 PA Super 203

KYLE OMALLEY                              :      IN THE SUPERIOR COURT OF
                                         :            PENNSYLVANIA
                   Appellant             :
                                         :
                                         :
                                         :
          v.                             :
                                         :
                                         :
                                         :
DANIELLE ISQUIERDO                       :      No. 214 EDA 2025

Appeal from the Order Entered December 9, 2024
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2021-13309


BEFORE:   PANELLA, P.J.E., NICHOLS, J., and FORD ELLIOTT, P.J.E.[*]

OPINION BY FORD ELLIOTT, P.J.E.:          **FILED SEPTEMBER 12, 2025**

Kyle OMalley[1] (Father), *pro se*, appeals from the order, entered in the

Court of Common Pleas of Montgomery County, finding that the

Commonwealth of Pennsylvania no longer possesses exclusive, continuing

jurisdiction to entertain his petition to modify an existing custody order,

pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act

(UCCJEA), 23 Pa.C.S. §§ 5401-5482. Upon review, we reverse and remand

for further proceedings.

The trial court set forth the relevant facts and procedural history of this

case as follows:

       [Father] commenced this action for shared legal custody and
       primary physical custody of his daughter, G.O., by filing a

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Father's name appears in the record spelled either "OMalley" or "O'Malley."

complaint in the Montgomery County Court of Common Pleas on June 14, 2021. In regard to initial subject matter jurisdiction over the custody dispute, he averred that G.O. was born [in] September [] 2020 and lived with him and [the child's mother, Danielle Isquierdo (Mother),] in Philadelphia until April 30 of 2021, at which time [G.O.] would have been just [about] six months old. [. . . Father] averred that from birth until April 30, 2021, G.O. lived with [both parents] in Philadelphia, Pennsylvania. [Mother] admitted that averment of fact[. Father] would eventually testify [. . .] that: he and [Mother] took their child to Brazil ([Mother]'s country of origin) on May 1, 2021; the couple intended to return to the United States with [G.O.] on May 29[, 2021. Father] returned to the United States on [that date,] but [Mother] remained in Brazil and retained [G.O.] there with her.

\* \* \*

On July 12, 2021, the Honorable Carolyn T. Carluccio filed a custody order styled as an "Agreed Order." [. . .] The order assumed [Mother] would return to the United States with G.O. and stated, [*inter alia*,] "Upon Mother's return and established residence[ . . .] the parties may revisit custody after October[] 2021."

[Also in July 2021, Father] filed an application styled as an "Emergency Petition for Special Relief Seeking Return of Child from Foreign Country." [Mother] filed a response to the petition. [Father] averred that [Mother] had commenced a legal action against him in Brazil and inferred that she intended not to return to the United States with [G.O.]. [. . .]

On August 10, 2021[,] the Honorable Kelly C. Wall filed an order disposing of the petition. The order stated, *inter alia*, "Mother has wrongfully retained the child in Brazil in violation of the laws of this Commonwealth." [. . .]

On January 27, 2022, [Mother] filed an "Emergency Petition for Custody." By that time, [Father] had moved to Barnegat, New Jersey[,] and had been residing there for more than four months. After a conference on August 1, 2022, by joint request of the parties, the court ordered the proceedings on that petition to be continued indefinitely, pending the filing by either party of a praecipe to re-list it for argument. Because [Mother] chose not to proceed to an evidentiary hearing on her petition, the court did not receive evidence that [Father] had moved from Pennsylvania to New Jersey, hence the [court] did not consider, *sua sponte*, its

exclusive continuing jurisdiction to file an order modifying the then-existing custody order. [. . .]

On November 12, 2024, [Father] filed an "Emergency Petition for Modification of Custody." Paragraph twenty of the petition averred, "Father has filed for divorce from Mother in New Jersey," which prompted the undersigned judge to inquire whether this court retained exclusive continuing subject matter jurisdiction to modify the existing custody order. The [court] held an evidentiary hearing on December 5, 2024. [Father] testified that on May 1, 2021, he, [Mother] and [G.O.] left their apartment in Philadelphia, Pennsylvania[,] to spend one month in Brazil. They planned to move into [Father's] parents' home in Barnegat, New Jersey when they returned. [Father] testified that he lived in Royersford, Montgomery County, Pennsylvania[,] from June 1, 2021[,] until August 31, 2021, but moved to Barnegat, New Jersey[,] on September 1, 2021[,] and has remained there since.

[G.O] has lived in Brazil continuously since May 1, 2021.

Trial Court Opinion, 2/7/25, at 1-6 (footnotes omitted). On December 9, 2024, the court issued the appealed-from order, finding that the court no longer had exclusive, continuing jurisdiction to consider G.O.'s custody. Father timely appealed, and he and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Father raises the following four issues for our review:

1. Did the trial court err in divesting itself of jurisdiction in its December 9, 2024[ o]rder without properly considering prior orders affirming jurisdiction, including those entered on July 12, 2021, August 10, 2021, and August 1, 2022?

2. Did the trial court err in disregarding the findings of the Brazilian Superior Court under the [Hague Convention on the Civil Aspects of International Child Abduction in 1980 (Hague Convention)], which determined that Pennsylvania is [G.O.'s] habitual residence and that Mother's retention of [G.O.] in Brazil was unlawful?

3. Did the trial court err in failing to recognize that [G.O.]'s continued presence in Brazil was due solely to unlawful

retention, rather than a voluntary change in residence, as adjudged by courts in both the United States and Brazil?

4. Did the trial court err in entering its December 9, 2024[ o]rder in disregard of [G.O.'s] best interests [], leaving the family in legal uncertainty following a four-year jurisdictional dispute, despite prior rulings affirming Montgomery County's jurisdiction?

Appellant's Brief, at 6 (unpaginated).

We consider Father's issues together since they all, in substance, allege that the court erred in finding it was divested of jurisdiction under the applicable statutes. Our standard of review over whether a court possesses subject matter jurisdiction is a question of law, which we review *de novo* with a plenary scope, whereas review of a court's decision of whether or not to exercise jurisdiction is for an abuse of discretion. *See J.S. v. R.S.S.*, 231 A.3d 942, 947 (Pa. Super. 2020); *see also S.K.C. v. J.L.C.*, 94 A.3d 402, 408 (Pa. Super. 2014) (distinguishing challenge to court's determination that it possesses subject matter jurisdiction under 23 Pa.C.S. § 5422 as question of law subject to *de novo* review, and appeal from order to exercise or decline jurisdiction as subject to abuse of discretion review). "[I]t is well-settled that the question of subject matter jurisdiction may be raised at any time, by any party, or by the court *sua sponte*." *B.J.D. v. D.L.C.*, 19 A.3d 1081, 1082 (Pa. Super. 2011) (citation omitted). Here, the UCCJEA governs the issue of subject matter jurisdiction, requiring us to engage in statutory interpretation as applied to the facts of the instant case. "The interpretation and application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law. As with all questions of law, the

- 4 -

appellate standard of review is *de novo* and the appellate scope of review is plenary." ***B.K.M. v. J.A.M.***, 50 A.3d 168, 172 (Pa. Super. 2012) (citations, quotation marks, brackets omitted).

Further, in interpreting statutes, this Court has explained that:

"The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). The plain language of the statute is generally the best indicator of legislative intent, and the words of a statute "shall be construed according to rules of grammar and according to their common and approved usage[.]" 1 Pa.C.S. § 1903(a). We generally look beyond the plain language of the statute only where the words are unclear or ambiguous, or the plain meaning would lead to "a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922.

***In re C.L.P.***, 126 A.3d 985, 989 (Pa. Super. 2015) (some citations omitted).

As noted above, Father filed the current petition for modification of custody pursuant to the UCCJEA. "The purpose of the UCCJEA is to avoid jurisdictional competition, promote cooperation between courts, deter the abduction of children, avoid relitigating custody decisions of other states, and facilitate the enforcement of custody orders of other states." ***A.L.-S. v. B.S.***, 117 A.3d 352, 356 (Pa. Super. 2015). Also, "[p]ursuant to [S]ection 5421(b), [S]ection 5421(a) is the exclusive jurisdictional basis for making an initial child custody determination by a court of this Commonwealth." ***S.K.C.***, 94 A.3d at 407.

Section 5421(a) sets forth the limited circumstances for vesting a court with subject matter jurisdiction to make an initial child custody determination under the UCCJEA and provides as follows:

**(a) General rule.** — Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth has jurisdiction to make an initial child custody determination only if:

**(1)** this Commonwealth is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within the six months before the commencement of the proceeding and the child is absent from this Commonwealth and a parent continues to live in the Commonwealth;

**(2)** a court of another state does not have jurisdiction under paragraph (1) or a court of the home state of the child has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum under section 5427 (relating to inconvenient forum) or section 5428 (relating to jurisdiction by declined by reasons of conduct) and:

> **(i)** the child and the child's parents, or the child and at least one parent or person acting as a parent, have a significant connection with this Commonwealth other than mere physical presence; and

> **(ii)** substantial evidence is available in this Commonwealth concerning the child's care, protection, training[,] and personal relationships;

**(3)** all courts having jurisdiction under paragraphs (1) and (2) have declined to exercise jurisdiction on the ground that a court of this Commonwealth is the more appropriate forum to determine the custody of the child under section 5427 or 5428; or

**(4)** no court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3).

23 Pa.C.S.A. § 5421. The UCCJEA defines "home state" as that state in which the child has "lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." 23 Pa.C.S. § 5402. "In the case of a child six months of age or younger, [home state] means the state in which the child lived from birth" with a parent. *Id.* A foreign country can be considered a "home state" under the UCCJEA. *Id.* at § 5405(a).

Instantly, the court found it had jurisdiction to make an initial child custody determination pursuant to Section 5421(a)(1) of the UCCJEA:

> [First, a court has initial subject matter jurisdiction of a child custody action if Pennsylvania is the child's home state on the date the plaintiff commences the action. *See* 23 Pa.C.S. § 5421(a)(1). The facts admitted by the parties rule out that possibility where, on the date Father filed his custody complaint, Pennsylvania was not G.O.'s home state because G.O. had lived outside of Pennsylvania for approximately six weeks. Nevertheless, during the six-month period before Father filed the complaint, Pennsylvania was the child's home state, and this fact is material to the determination of initial jurisdiction. *See* 23 Pa.C.S. § 5421(a)(1) (court may have initial jurisdiction if Pennsylvania was child's home state within previous six months, but only if child is absent from Pennsylvania and one parent continues to live within Commonwealth).]

> [Indeed, Father] testified credibly that when he, [Mother] and [G.O.] traveled to Brazil in May of 2021, he intended to return to the United States (specifically, to the state of New Jersey) at the end of the month, but he returned to Royersford, Montgomery County, Pennsylvania[,] instead. [G.O.] was absent from Pennsylvania when [Father] commenced this custody action, but [Father] continued to live in this commonwealth at that time. [Father's] credible testimony supports the conclusion that the UCCJEA vested Pennsylvania with initial subject matter jurisdiction over this custody dispute. [. . .]

[. . . Also, here, t]he [predicate] circumstance [under Section 5421(a)(2)] is satisfied, because only Pennsylvania could have been [G.O.]'s home state at the time [Father] commenced this custody action. Therefore, one must inquire into the other conditions given by [Section] 5421(a)(2) [. . .]

[Here, t]he record negates the possibility that either of the[ Section 5421(a)(2)(i) or (ii)] conditions could be satisfied. [G.O.] was born in Pennsylvania in September of 2020 but has lived in Brazil since May 1, 2021. The record includes no facts to support a finding that any person who cares, protects, trains[,] or has a personal relationship with [G.O.] lives in Pennsylvania. The substantial evidence of [G.O.]'s care, protection, training[,] and personal relationships are in Brazil, not Pennsylvania. Therefore, [Section] 5421(a)(2) of the UCCJEA did not vest [the Pennsylvania] court[s] with subject matter jurisdiction over the parties' custody dispute.

[. . . Next, t]he record negates [Section 5421(a)(3) as a] basis for jurisdiction because it requires that a state other than Pennsylvania could have subject matter jurisdiction under [Section] 5421(a)(1) or (2). No court outside of Pennsylvania could have jurisdiction under either of those paragraphs because only Pennsylvania could have been [G.O.]'s home state at the time [Father] commenced this custody action.

[. . . Finally, t]he record negates the possibility that another state could have jurisdiction under the criteria specified in [Sections] 5421(a)(1), (2)[,] or (3). Therefore, assuming *arguendo* that [Father] did not produce credible evidence that he lived in Pennsylvania when he filed the complaint, and therefore could not assert [jurisdiction under Section] 5421(a)(1) as the basis for jurisdiction, [Section] 5421(a)(4) would establish initial subject matter custody jurisdiction.

Trial Court Opinion, 2/7/25, at 7-11 (footnotes omitted).

Preliminarily, we observe that the court credited Father's version of the timeline of the places he lived, including the validity of the Pennsylvania lease he signed upon his return from Brazil, which credibility determinations we may

not reweigh. **See S.K.C.**, 94 A.3d 414-15 (credibility determinations best made by trial court which observes witnesses testify).

After our substantive review of the merits of the case, the standard of review, the statutes, and applicable case law, we agree with the trial court's above analysis regarding the jurisdiction of Pennsylvania courts to make an initial child custody determination pursuant to Section 5421(a), and we find no error of law. Indeed, the Montgomery County Court of Common Pleas was properly vested with jurisdiction to make the initial child custody determination, pursuant to Section 5421(a)(1) of the UCCJEA, when Father filed his complaint there on June 14, 2021. **See** 23 Pa.C.S. § 5421(a)(1) (["A] court of this Commonwealth has jurisdiction to make an initial child custody determination only if[ ]this Commonwealth [. . .] was the home state of the child within six months before the commencement of the proceeding and the child is absent from this Commonwealth but a parent [. . .] continues to live in this Commonwealth[.]"); 23 Pa.C.S. § 5402 (defining child's "home state").

Therefore, we proceed to the question of whether Pennsylvania retained "exclusive, continuing jurisdiction" for the proceedings that followed. **See J.S.**, 231 A.3d at 948 (stating that "If a Pennsylvania trial court with jurisdiction enters an order awarding custody, this state will retain 'exclusive, continuing jurisdiction' unless or until certain conditions occur.") (citation omitted).

Section 5422 provides for continuing, exclusive jurisdiction after a court has already made an initial custody determination, and states as follows:

**§ 5422. Exclusive, continuing jurisdiction.**

**(a) General rule.**--Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth which has made a child custody determination consistent with section 5421 (relating to initial child custody jurisdiction) or 5423 (relating to jurisdiction to modify determination) has exclusive, continuing jurisdiction over the determination until:

(1) a court of this Commonwealth determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this Commonwealth and that substantial evidence is no longer available in this Commonwealth concerning the child's care, protection, training[,] and personal relationships; or

(2) a court of this Commonwealth or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this Commonwealth.

**(b) Modification where court does not have exclusive, continuing jurisdiction.**--A court of this Commonwealth which has made a child custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under section 5421.

23 Pa.C.S.A. § 5422.  In other words, as we have explained, "Section 5422(b) states that if the trial court has made a child custody determination, but no longer has exclusive, continuing jurisdiction under [S]ection 5422(a), it may modify that determination if it has jurisdiction to make an initial custody determination under [S]ection 5421." ***Weliver v. Ortiz***, 291 A.3d 427, 433 (Pa. Super. 2023) (quoting ***S.K.C.***, 94 A.3d at 407-08).

In defining the "commencement" of a "child custody proceeding," pursuant to a Section 5422 analysis, this Court has concluded that "the trial

court must rely upon the factual circumstances as they existed when the modification petition was filed. Likewise, when reviewing a trial court's [S]ection 5422 determination, this Court must rely upon the facts as they existed at the time the modification petition was filed." *T.D. v. M.H.*, 219 A.3d 1190, 1197 (Pa. Super. 2019) (citation, quotation marks, and emphasis omitted).

"Section 5422 is written in the disjunctive, and, therefore, the trial court is required only to determine whether the child fails one of the jurisdictional tests set forth in Section 5422(a)." *Id.* at 1195 (citing *Wagner v. Wagner*, 887 A.2d 282, 286 (Pa. Super. 2005) (ellipsis and brackets omitted).

> Under Section 5422(a)(2), continuing jurisdiction is lost when the child, the child's parents, and any person acting as a parent no longer resides in the original decree state. In this context, "residence" means living in a particular place, requiring only physical presence. The phrase "do not presently reside" is not used in the sense of a technical domicile. The fact that the original custody determination state still considers one parent a domiciliary does not prevent it from declining exclusive, continuing jurisdiction after the child, the parents, and all persons acting as parents have moved from the state.

*T.D.*, 219 A.3d at 1197 (citations, some quotation marks, and brackets omitted).

Instantly, the trial court explained why it was dispossessed of exclusive, continuing jurisdiction in G.O.'s custody case, under Section 5422(a)(2), as follows:

> [Father] testified [. . .] that he has not resided in Pennsylvania since September of 2021, and no evidence of record indicates otherwise. Therefore, this court was not vested with exclusive

continuing jurisdiction when [Mother] filed her Emergency Petition for Custody on January 12, 2022, when this court continued proceedings on that petition by the order of August 1, 2022, when [Father] filed his Emergency Petition for Modification of Custody on November 12, 2024[,] and when this court filed the order of December 9, 2024, from which [Father] appeals.

The facts of record negate the possibility that Pennsylvania re-acquired jurisdiction over this custody dispute by virtue of [S]ection 5422[(b). **See**] 23 Pa.C.S. § 5422(b). [. . .]

[G.O.] has lived in Brazil continuously since May 1, 2021. Therefore, as of the date [Father] filed his most recent petition for a modification of custody, [G.O.'s] home state would be Brazil. [**See**] 23 Pa.C.S. § 5402.

Furthermore, [G.O.]'s home state would not have been Pennsylvania at any time within six months before [Father] filed his most recent petition. Therefore, the courts of Pennsylvania would not, at the time, have jurisdiction to make an initial determination under the criteria stated in [Section] 5421(a)(1). The courts of Pennsylvania would not have jurisdiction under [Section] 5421(a)(2) because a court of Brazil would have jurisdiction under [Section] 5421(a)(1).

The courts of Pennsylvania would not have jurisdiction under [Section] 5421(a)(3) because **neither party has produced evidence that the courts of Brazil have declined to exercise jurisdiction on the ground that a court of this Commonwealth is the more appropriate forum to determine the custody of the child**[.] The record indicates that the courts of Brazil are exercising jurisdiction over a claim by [Father] that [Mother] has wrongfully abducted or retained [G.O.] in Brazil, and a request by [Mother] for a protective order against [Father]. Both causes of action are distinct from this child custody controversy, and there is no evidence supporting a legal conclusion that, in either one of those causes of action, a Brazilian court possessed of subject-matter jurisdiction to determine custody of the child declined to do so on the ground that a court of this Commonwealth was the more appropriate forum. Finally, the courts of Pennsylvania would not have jurisdiction under paragraph 5421(a)(4) because Brazil would have jurisdiction under paragraph (a)(1).

Trial Court Opinion, 2/7/25, at 11-15 (emphasis added).

After our review, preliminarily, by the plain language of Section 5422(a)(2), we conclude that the trial court did not err in finding Pennsylvania was divested of continuing exclusive jurisdiction under the UCCJEA once Father moved to New Jersey, as all relevant individuals at that point had departed from the Commonwealth. *See* 23 Pa.C.S. § 5422(a)(2). Therefore, the court properly proceeded to an analysis under Section 5422(b), which operates by reference to Section 5421. *See* 23 Pa.C.S. §§ 5422(b), 5421.

Nevertheless, in conducting this Section 5421 analysis (pursuant to Section 5422(b)), we conclude the court erred when it found that, at the time Father filed his modification petition, Brazil had not determined a court of the United States would be the more appropriate forum to entertain the parties' custody dispute. *See* 23 Pa.C.S. § 5421(a)(3). Indeed, the text of the Brazilian Superior Court Hague Convention decision, which is included in the certified record, provides that the United States courts are the more appropriate forum for deciding G.O.'s custody when compared to those of Brazil.

Specifically, the written Brazilian Superior Court Hague Convention decision of record acknowledges that custody can only be resolved subsequent to the Hague Convention proceedings and only in the state with jurisdiction to do so. *See* Emergency Petition to Modify Custody, 11/12/24, at Exhibit D[2]

_____

[2] Although the original Brazilian Superior Court's decision is translated into English using machine translation, Mother has not objected to the substance
*(Footnote Continued Next Page)*

- 13 -

(Opinion of Brazilian Superior Court, filed 8/20/24, at 48) ("The provisions of the [Hague C]onvention, especially those of [Article 3(a)], and 4, leave no room for doubt that **the appropriate state jurisdiction is established to decide on the custody of the child** who has been abducted or retained, **taking into account the child's place of residence *immediately prior to the act of clandestine transfer or retention*.**") (emphasis in italics in original; emphasis in bold added).  In that same decision, the Brazilian Superior Court also determined that the United States—and specifically not Brazil—was G.O.'s country of habitual residence under the convention and that Mother wrongfully retained G.O. in Brazil.  ***See id.*** at 50 ("[F]or the purpose of defining the appropriate state jurisdiction according to the conventional rules, the habitual residence that the family had undisputedly maintained until the act of retention took place, i.e. the United States of America, prevails."); ***see id.*** at 53 ("The immigration obstacles mentioned here [by Mother] are, as a rule, a direct consequence of the illegal act of the abducting or retaining parent, so to accept them as a defense argument would be to benefit the offender for [her] own unlawful behavior.").

After our *de novo* review, in conducting the proper Section 5421 analysis, pursuant to Section 5422(b), first, we agree that Sections

_____

of the translation as it appears in the record.  Also, as the translation is unpaginated, we refer and cite to the page numbers of Father's Emergency Petition to Modify, as they appear in the upper right-hand corners of Exhibit D to that filing, which is the machine translation of the written decision.

5421(a)(1) and (a)(2) do not confer jurisdiction in this case in Pennsylvania. Father has moved to New Jersey,[3] and G.O. had no other connection to Pennsylvania at the time Father filed his modification petition. *See* 23 Pa.C.S. § 5421(a)(1). Also, at the time Father filed his modification petition, "substantial evidence" was no longer available in this Commonwealth concerning G.O.'s "care, protection, training, and personal relationships." *Id.* at § 5421(a)(2).

In turning to Section 5421(a)(3), the trial court correctly points out that Brazil qualifies as the child's home state under the plain text of the UCCJEA. *See* 23 Pa.C.S. §§ 5402, 5405(a). However, in conducting its analysis, the court failed to consider the plain text of the Brazilian Superior Court decision, which acknowledges the prohibition on Brazilian exercise of jurisdiction over G.O.'s custody in favor of deferring to United States courts. *See* Emergency Petition to Modify Custody, 11/12/24, at Exhibit D at 50. These conclusions by the Brazilian Superior Court are supported by the plain language of the Hague Convention, which also applies in this Commonwealth.[4] *See* Hague

---

[3] The Pennsylvania and New Jersey UCCJEA provisions are virtually identical. *See* N.J.S.A. 2A:34-53 to 95.

[4] This Court has previously recognized the applicability of the Hague Convention within this Commonwealth:

The Hague Conference on Private International Law adopted the Hague Convention on the Civil Aspects of International Child Abduction in 1980. T.I.A.S. No. 11670, S. Treaty Doc. No. 99-11. In 1988, the United States ratified the treaty and passed

*(Footnote Continued Next Page)*

Convention, Article 16 ("After receiving notice of a wrongful removal or retention of a child in the sense of Article 3, the judicial or administrative authorities of the Contracting State to which the child has been removed or in which it has been retained **shall not decide on the merits of rights of custody until it has been determined that the child is not to be returned under this Convention** or unless an application under this Convention is not lodged within a reasonable time following receipt of the notice.") (emphasis added).  Moreover, although Brazilian courts have not declined jurisdiction over custody claims *strictly* pursuant to Section 5427 or Section 5428 of the UCCJEA, *see* 23 Pa.C.S. § 5421(a)(3), the written Brazilian decision concludes that the United States, rather than Brazil, *is the*

_____

implementing legislation, known as the International Child Abduction Remedies Act (ICARA), [] 42 U.S.C. § 11601 *et seq.*  [] *Abbott v. Abbott*, 560 U.S. 1, [] (2010).

The Convention seeks "to secure the prompt return of children wrongfully removed to or retained in any Contracting State" and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States."  Art. 1, S. Treaty Doc. No. 99-11, at 7.  Article 3 of the Convention provides that the "removal or the retention of a child is to be considered wrongful" when "it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention" and "at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention."  [*Id.*]*.*

*O.G. v. A.B.*, 234 A.3d 766, 774-75 (Pa. Super. 2020) (quoting *Chafin v. Chafin*, 568 U.S. 165, 168 (2013)).

*more appropriate forum for custody determinations* between Mother and Father as to G.O. **See** Emergency Petition to Modify Custody, 11/12/24, at Exhibit D at 50. Consideration of the relative appropriateness of each jurisdiction and whether any courts have declined jurisdiction is the central analysis of Section 5421(a)(3). **See** 23 Pa.C.S. § 5421(a)(3).

If we were to apply the trial court's reasoning under these circumstances, we would reach the illogical result that no state or country has jurisdiction to consider the custody issues because Brazil is the only state or country that has jurisdiction as the child's home state under the UCCJEA, but Brazil has clearly divested itself of jurisdiction, deferring to the United States, to resolve custody issues. We may not reach an absurd conclusion such as that no court has jurisdiction to hear G.O.'s custody under the UCCJEA. **See C.L.P.**, 126 A.3d at 989; 1 Pa.C.S. § 1922. Indeed, Section 5421(a)(4) demonstrates a legislative intent to prevent such an absurd result. **See** 23 Pa.C.S. § 5421(a)(4) (providing for necessity or vacuum jurisdiction).

Further, we note that our holding, under these facts, that Section 5421(a)(3) vests Pennsylvania courts with continuing, exclusive jurisdiction, under Section 5422(b), properly dovetails with the purposes of the UCCJEA, which are to avoid jurisdictional competition, promote cooperation between courts, deter the abduction of children, avoid relitigating custody decisions of other states, and facilitate the enforcement of custody orders of other states. **See A.L.-S.**, 117 A.3d at 356. Moreover, if we were to conclude that Mother could wrongfully retain G.O. in Brazil and thereby create exclusive jurisdiction

under the UCCJEA in Brazil, Mother would be rewarded for her wrongful forum shopping and unjustified behavior, as has been characterized by the courts of Brazil and Pennsylvania. *See* Order, 8/10/21 (stating "Mother has wrongfully retained the child in Brazil in violation of the laws of this Commonwealth."); *see also* Emergency Petition to Modify Custody, 11/12/24, at Exhibit D at 53 ("The immigration obstacles mentioned here [by Mother] are, as a rule, a direct consequence of the illegal act of the abducting or retaining parent, so to accept them as a defense argument would be to benefit the offender for [her] own unlawful behavior."). We observe that it is contrary to Pennsylvania law to reward such contemptuous behavior, and we will not do so here. *See* *S.K.C.*, 94 A.3d at 413 ("We refuse to incentivize contemptuous behavior on the part of a litigant. Contemptuous behavior should be punished, not rewarded. To reward contempt would undermine the very nature of the judicial process.").

Accordingly, we hold that the trial court had exclusive, continuing jurisdiction, under Section 5422(b), pursuant to Section 5421(a)(3), thereby requiring that we vacate the order and remand for further proceedings.[5]

Order vacated. Case remanded. Jurisdiction relinquished.

_____

[5] To the extent that Mother relies upon Brazilian court proceedings that are not in the record, we may not consider those proceedings because this Court may review and consider only items which have been duly certified in the record on appeal*. See Rosselli v. Rosselli*, 750 A.2d 355, 359 (Pa. Super. 2000). Indeed, "[f]or purposes of appellate review, what is not of record does not exist." *Id.*

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>9/12/2025</u>